WARREN HUTCHINS v. THE PRIESTLY EXPRESS WAGON & SLEIGH COMPANY.

*Negligence—Of plaintiff held clearly established and case properly taken from the jury—See opinion for discussion of evidence—Duty of sane person of mature years to exercise ordinary care, etc.*

1. Upon a review of the evidence (see opinion), the court held that plaintiff was negligent, and affirmed the action of the court below in taking the case from the jury.

2. A person why pays little heed to his surroundings, and goes hither and thither in an absent-minded manner, or thinking only of some particular object and shutting his eyes to everything else, is guilty of an inattention sometimes dangerous to himself and quite as often to his neighbors, and of• a want of that *ordinary* care which the safety of society ,requires all *sane* persons of *mature* age to exercise, and for which they are civilly responsible.

Error to Superior Court of Grand Rapids. (Parrish, J.) Argued April 22, 1886.   Decided April 29, 1886.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Stone & Hyde*, for appellant:

When there is evidence of neglect on the part of the defendant the question of plaintiff's contributory negligence is for the jury: Thompson on Negligence, 298; *Bennett v. R. R. Co.*, 102 U. S. 580; *Powers v. Harlow*, 53 Mich. 507–516. See, also, *Eaton v. Winnie*, 20 Id. 165; *Penn. R. R. Co. v. Ogier*, 35 Penn. St. 72; *Gordon v. G. S. R. R. Co.*, 40 Barb. 550; *Ernst v. H. R. R. R. Co.*, 35 N. Y. 28; 2 Thompson on Neg. 1172–3 (§§ 18, 19, and cases cited); *Swoboda v. Ward*, 40 Mich. 424.

The foregoing cases, and many·others that might be cited, hold that as to a *stranger* the occupant of shops, factories, etc., is bound to give warning of dangers of which he may well be ignorant. If, as plaintiff testified, he supposed the opening to be a door, and did not know that it was an opening in the shaft, there could be no contributory negligence, because *knowledge* is an essential ingredient. The fact that he *might* have discovered the danger if he had looked does

not change the rule; he was there for a lawful purpose, and he was not obliged to anticipate defendant's negligence: *Freer v. Cameron*, 55 Am. Dec. 672 (note); and his knowledge of the danger is not conclusive evidence of contributory negligence: Id. 673.

In any event, the question of such negligence depended upon the credibility of witnesses, and inferences from facts and circumstances about which honest, intelligent, and impartial men might differ, and should therefore have been submitted to the jury: *D. & M. R. R. Co. v. Van Steinburg*, 17 Mich. 118–125; *Swoboda v. Ward*, 40 Id. 424.

Though one negligently places his property in a dangerous place, yet one who does it an injury shall be answerable to him if by the exercise of ordinary care he might have prevented the mischief: *Radley v. London, etc., Ry. Co.*, 1 App. Cases, 759; 2 Thomp. on Neg. 1108–1121; *Freer v. Cameron*, 55 Am. Dec. 668–670; *Richmond, etc., R. R. Co. v. Anderson's Admr.*, 31 Gratt. 812; Cooley on Torts, 675 (note); *B. & O. R. R. Co. v. State*, 33 Md. 542.

It was the duty of defendant to provide machinery well calculated to prevent accidents, and to take reasonable precautions to that end. It appears that defendant's elevator machinery was of a dangerous character, carelessly constructed and out of repair, and that the openings in the shaft were unguarded. *Hoyt v. Jeffers*, 30 Mich. 193–4; *Swoboda v. Ward*, 49 Id. 422–5.

*Fletcher & Wanty*, for defendant:

It was incumbent on the plaintiff to not only prove negligence on the part of the defendant, but that its negligence was the sole cause of the injury, and that he could not, by the exercise of due care and diligence, have avoided the accident. If the negligence of the plaintiff contributed to the injury he cannot recover, for the doctrine of comparative negligence in actions of this kind is not recognized by the courts of this State: *Mynning v. D., L. & N. R. R. Co.*, 59 Mich. 257, and Michigan cases cited.

No negligence on the part of the defendant was shown. The elevator was not constructed or used for passengers, and for years had answered the purpose of a freight elevator, without accident. When not in *use* the inside and outside doors were closed, and *then* there was no way of getting into the shaft, and when *in* use these doors must necessarily be opened; but the whole shaft was in sight, and there was no more danger from the elevator than from any other piece of exposed ma-

chinery in the shop. Any person with ordinary intelligence could see and appreciate the danger of going under it, for the thing itself spoke louder than any notice that could have been given. That there are other elevators manufactured less liable to accident than this does not impose on the defendant the duty to purchase and use one, and it is not negligence for it to continue to use the one it already has : *Ft. Wayne, Jackson & S. R. R. Co. v. Gildersleeve*, 33 Mich. 137.

"Business establishments are not bound at their peril to use only the best machinery and implements and the safest methods:" *M. C. R. R. Co. v. Smithson*, 45 Mich. 219 ; *McGinnis v. Canada S. Bridge Co.*, 49 Id. 470-1.

The plaintiff was guilty of contributory negligence, and if he had been in the exercise of due care and diligence the accident could not have happened : *Taylor v. Carew Mfg. Co.*, 140 Mass. 150.

It must be conceded, under the decisions of this State, that if the defendant knew of the existence of the elevator, and used no care to avoid getting under it, that want of care precludes a recovery : *D. & M. R. R. Co. v. Van Steinburg*, 17 Mich. 99 ; *Kelly v. Hendrie*, 26 Id. 261, 262 ; *L. S. & M. S. R. R. Co. v. Miller*, 25 Id. 274 ; *M. C. R. R. Co. v. Campau*, 35 Id. 470-1 ; *M., H. & O. R. R. Co. v. Handford*, 39 Id. 539, 540, 541 ; *Mynning v. D., L. & N. R. R. Co.*, 59 Id. 257, and cases cited.

It can not be seriously urged that plaintiff did not know that the elevator was there and therefore could not appreciate the danger. He drove his team to the elevator, that the load that was to come down upon it could be taken from the elevator and put upon his dray. When he entered the shop he found the elevator being loaded, and waited until the loading was finished, and was then invited to ride up on it. He went to the third floor by stairways in close proximity to the elevator, which also went up to the third floor. He there helped load the elevator with the lumber he came after, and when it was loaded he preceded the elevator down that he might look after his team. When he found himself under the elevator, he called out : "Why don't you raise the elevator,—I am killed !"

It would be idle for him now to say that he did not know the elevator was there. It was his duty, upon coming back to the place where he had seen the elevator shaft, to stop and see where the elevator was, and that he was not going underneath it ; and, in the absence of a showing that he took such precautions, he is not entitled to recover.

That from any cause he did not have the danger of passing under the elevator present in his mind (so long as he knew that it was there) would be no excuse for going under it: *Munger v. City of Marshalltown*, 56 Ia. 216; and the fact that he had *forgotten* that he was in the vicinity of the elevator shaft will not excuse his neglect: *B. & O. R. R. Co. v. Whitacre*, 35 Ohio St. 627; *Bruker v. The Town of Covington*, 69 Ind. 33.

A person injured by machinery about which his duty led him to be, if he knew its condition, position, and character, and could have reasonably avoided danger by approaching the same from the outward revolutions of the gear, *and did not do so because he did not think or look*, is guilty of such a degree of negligence as to preclude his recovery. It was the duty of plaintiff, when approaching machinery about which he was employed, both to think and look in order to avoid injury from such machinery: *Hurst v. Burnside*, 12 Oregon, 520.

In this case there is no contradictory evidence. This plaintiff must have voluntarily gone under this descending elevator realizing the consequences, or he went under it because he did not stop to think where he was or what he was doing. In either case he cannot recover.

CAMPBELL, C. J. Plaintiff sued for personal injuries from being thrown down in an elevator shaft, beneath a descending elevator, whereby he was bruised and injured. The case was taken from the jury on account of his carelessness in stepping down into the shaft, which was filled with shavings sufficient to ease the pressure and save him from being crushed. The question of defendant's negligence was not treated as important, and if the plaintiff had not been regarded as at fault, the case would not probably have been taken from the jury. We think that there was enough for the jury on defendant's negligence, and therefore shall only consider plaintiff's conduct.

Defendant is engaged in making small wagons, and similar light articles, chiefly for children, and appears to have also done work in finishing small wood-work for customers. On the sixteenth of May, 1885, plaintiff went to defendant's factory between seven and eight o'clock in the morning, with one Haney, to get a load of stuff for Haney. Plaintiff drove an express wagon. He is an elderly man, who seems to have

followed a good many vocations of a miscellaneous character, including farming, gardening, teaching, and different branches of ordinary labor, and was then driving this express, which was not his own. He is evidently an intelligent man, apparently entirely steady and alert, but evidently possessing the heedlessness and uneasiness common to men of his bent.

The building had an elevator shaft outside of it, and opening about opposite where plaintiff fastened his team. He and Haney went into the building through a doorway beyond the elevator, and, when inside, passed along the floor, and a little way beyond the inner elevator opening, to a stairway on the same side of the building, which took them to the second story, whence they followed another stairway to the third story. In that story Haney's lumber was loaded into the elevator, to be lowered. Plaintiff, after it was loaded, went down, as he says, to see to his team. When he reached the bottom of the stairs on the lower floor, the elevator opening being near, and the outer door of it being also open, he stepped down into the bed of shavings, supposing, as he says, that that was the way out of doors, and was knocked down by the descending elevator, and would have been killed or hurt more seriously had it not been for the elasticity of the shavings. The elevator was out of gear, as it is claimed, to some extent, or it perhaps might have been stopped before reaching him. So far as this case is concerned, if the defendant was negligent it was in leaving the shaft door open near the stairway. It can never be safe to get beneath any elevator car, however well geared, when it is descending, as plaintiff must have known this would descend, as he knew it had just been loaded.

The question is reduced to the simple inquiry whether he was negligent in stepping into the shaft, assuming, as he claims he did, that it was the outside door. He claims to have good sight and hearing. The time when this occurred was in broad daylight, and the outer elevator door was open, so that he saw through it. The space between the doorway into the shaft and the outer one was the full width of the shaft, which was not a small one, being adapted to hoisting

such lumber as was handled in the building. The top of the bed of shavings was about a foot below the doorway. When he entered the building, he entered directly by an ordinary door in the wall, and not through any such passage.

No man with his wits about him could have mistaken these double doorways, divided by such a space, for an ordinary outside door, or have imagined such a pit to have been the way of exit. Whatever might have been the case in darkness, it could not be difficult to understand it in daylight. Plaintiff saw his horses through the opening, and if he had paid the slightest heed could not have failed to see what was between. The only explanation of his conduct is, what there is no difficulty in gathering from his own testimony, although he does not seem to be aware of it, that he is one of those persons who pay little heed to their surroundings, and go hither and thither on their errands absent-minded, or thinking only of some particular object and shutting their eyes to everything else. Such inattention is sometimes dangerous to the person himself, and quite as often to his neighbors. It is a want of that ordinary care which the safety of society requires all sane persons of mature age to exercise, and for which they are civilly responsible. Business could not be carried on without this requirement.[1]

The judge below exhibited a natural and kindly reluctance to do what he nevertheless felt compelled to do in refusing this old man relief against his heedlessness. The case seems a very plain one, and the judgment should not be disturbed, but should be affirmed.

CHAMPLIN and SHERWOOD, JJ., concurred. MORSE, J., did not sit.

---

[1] *Donaldson v. Wilson*, 60 Mich. 86 (head-note 1); *Smith v. Peninsular Car Works*, Id. 501 (head-notes 1, 2, 3, 4).