KILLIAN *vs.* THE AUGUSTA AND KNOXVILLE RAILROAD COMPANY, and *vice versa.*

1. Where a train loaded with wood was transported over one railroad to a city, and at the instance of the shipper, permission was obtained from the superintendent of the road for the train to proceed over the track of two other roads to a third, and over it to the point of destination, the train being manned by employés of the first road, and a person, by direction of the superintendent of that road, accompanied the train for the purpose of seeing that it was unloaded

promptly and returned to the road to which it belonged, and where an arrangement was made with the superintendent of the third road for the train to proceed over its track, and he directed an employé to go upon the engine and act as pilot and inform the engineer of the curves and " tight places " in the track, the only duty or obligation owed by the third railroad company to the employés of the first company upon such train was to have a reasonably safe track over which the cars were to be transported.

(a) This case differs from that of the *Macon & Augusta Railroad Company vs. Mayes*, 49 *Ga.* 355.   There it was ruled that the company was liable to third persons and to the public for injuries resulting from a collision caused by allowing a train of another to come upon its franchise, and did not refer to an employé of the company thus using its road.

(b) The person sent with the train to see to the unloading and return of the cars was not an employé of the last road over which the train ran; and therefore the charges of the court as to whether he was free from fault and negligence as an employé thereof, and whether it was in fault, were not applicable to the case.

2. Such person was an employé of the first company, and the only obligation the last company was under as to him was to furnish him a safe track on which the train might be safely run.   If it failed to do this, and he was killed solely by reason of the defect in its track, his widow would be entitled to recover therefor.

3. If the injury was occasioned solely by a defect in the trucks of the car belonging to the first company, she would not be entitled to recover from the last.

4. If the injury was caused both by a defect in the track and by a defect in the trucks, she would be entitled to recover an amount in the proportion the defect in the track as compared to that in the trucks contributed to the injury.

5. The last company, as to the safety of its track, was liable to him as a passenger; and if the injury was caused solely by a defect in the track, and he was not negligent or could not have avoided the injury by the exercise of ordinary care and diligence, his widow (he having been killed) would be entitled to recover the amount of damages she has sustained.   If he was negligent, but could not, by the exercise of ordinary care, have avoided the injury caused by the defendant's negligence, then the damages should be diminished as in cases of contributory negligence.

6. There was no error in striking from the plaintiff's declaration certain words therein in reference to the deprivation of the plaintiff of the society, company and companionship of her husband, causing her great mental pain and suffering and leaving their infant child, twelve years old, fatherless, such allegations being irrelevant to the case.   Nor was there error in ruling out the testimony of the plaintiff tending to sustain the allegations so stricken.

7. Although the defendant had crossed a set of interrogatories sued out by the plaintiff, which had been executed and returned, yet where such defendant desired to propound additional cross-interrogatories to the witness to lay the foundation for impeaching him, it had the right to do so, and did not thereby make him its witness.

8. The question as to whether one of the commissioners taking the interrogatories was an attorney for the defendant, was submitted to the court, and he having determined from the evidence before him that the commissioner was not such attorney, and the evidence sustaining his finding, this court will not interfere therewith.

9. There was no error in admitting the answers to questions propounded to a witness as to the personal expenses of the deceased. The rule as heretofore existing in this State did not limit personal expenses of the deceased, to be deducted from the recovery, simply to his food and clothing; but his personal habits, his station in life, his means and manner of living, might be proved for the consideration of the jury, and they be allowed to deduct what they might consider from the testimony to be his reasonable personal expenses, taking all these things into consideration.

10. There was no error in refusing to give in charge the requests of the plaintiff set out in the cross-bill of exceptions.

11. The question of what is ordinary care and what is negligence is one exclusively for the jury, and the court should not take this question from their consideration. This was done in the charges given and excepted to in the cross-bill of exceptions.

November 22, 1887.

Railroads. Damages. Negligence. Master and Servant. Pleadings. Interrogatories. Practice in Superior Court. Evidence. Charge of Court. Before Judge RONEY. Richmond Superior Court. April Adjourned Term, 1887.

In connection with the report contained in the decision, it is proper to state that, in submitting the case to the jury, the court gave, among others, the following instructions, which formed grounds of the motion for a new trial by the defendant:

"Where a railroad permits other companies or persons to exercise the franchise of running cars drawn by steam over its road, the company owning the road, and to which the law has intrusted the franchise, is liable for any injury

done, as though the company owning the road were itself running the cars.

"If you find from the evidence that, upon the train's reaching the depot of the Augusta and Knoxville Railroad, the authorities of that road put a man upon the engine with direction to point out the grades and tight places in the curves, and that this man gave directions to the engineer how to run, and that the Augusta and Knoxville collected freight for this train, then for all legal purposes the train became the train of the Knoxville Railroad, and it became liable for all damages caused in the running to the same extent as if itself owned the cars and engines.

"If you believe from the evidence that Mr. Killian, as an employé of the Port Royal Railway, was sent by the superintendent of that road, together with the other employés on the train, to go up with it, and upon reaching and going upon the franchise of the Knoxville Railroad, Killian continued with the other employés upon the train, with the knowledge or consent of the authorities of the Knoxville Railroad, then he was rightfully upon the train; and if, while so upon the train, he was injured without fault or negligence upon his part and could not, by the exercise of ordinary care, have avoided the consequences to himself, then the plaintiff is entitled to recover from the defendant such damages as the evidence shows he has sustained, unless the evidence shows to you that defendant's agents had exercised all ordinary and reasonable care and diligence to have avoided the injury.

"If the company permitted the cars of the Port Royal Railway Company to enter upon its franchise and charge freights for the use thereof, then it was liable for any acts of negligence in the running of the same, and for injuries caused while operating the cars, in the same manner as if the cars had belonged to the company."

In her cross-bill of exceptions, the plaintiff assigned error as follows:

(1) Because the court struck from her declaration the

words, " and their minor child about twelve years old ";
also the words, " depriving your petitioner of the society,
company and companionship of her husband "; also the
words, " has been deprived of the society, company and
companionship of her husband, causing her great mental
pain and suffering, and [leaving] their infant child. about
twelve years old, fatherless "; and because the court ruled
out testimony of the plaintiff which would sustain these
words in her allegations.—The reason for this assignment
of error was, because the defendant's motion to strike the
words and rule out the evidence came too late, being at the
third trial of the case, and the allegations and evidence
having been used on both former trials; besides, they were
relevant and proper.

(2) Because the court admitted a second set of inter-
rogatories of L. Frank Radford, taken by defendant and
called "additional cross-interrogatories," in crossing which
the plaintiff had objected to them as leading and irrele-
vant; and because the defendant, before the examination
in chief took place, had full knowledge of the facts in-
quired about. She alleged that the defendant, in taking
out a second commission, made Radford its own witness.
She further objected because one of the commissioners,
Howe, was an attorney for defendant in this case, and in-
troduced a letter from the law firm of which Howe was a
member, containing the statement that "we cannot act as
commissioners for you in the case of Killian against the
A. & K. R. R., as we are attorneys for the Central Rail-
road in this case," and suggesting another person as com-
missioner; this letter being in response to one from plain-
tiff's attorneys to the other member of Howe's firm asking
if he would act as commissioner in taking the interrogato-
ries under the first commission issued. In response to this
evidence, the original counsel for defendant stated in his
place that neither of the firm mentioned had ever been
counsel in this case.

(3) Because the court allowed Hayes, a witness for the

defendant, after stating, on cross-examination, the necessary personal expense of plaintiff's husband, to answer questions concerning his other expenses, his habits of spending money and his sociability, liberality, etc.; the objection being that no evidence as to expenses, except "the necessary personal expenses," was admissible.

(4) Because the court refused requests of the plaintiff to charge as follows: "A railroad in Georgia is liable for all the injuries occurring to employés upon its cars, except that, when an employé is hurt, and the injury occurs in connection with the business he is performing, or which his duties require him to perform, he must first show himself without fault or negligence; and the law thereupon pre· sumes the company is at fault, and it will be liable unless it shows that its agents have exercised all ordinary and reasonable care and diligence to avoid the injury.

"When an injury occurs, and the evidence does not show that it occurred in connection with the business about which the person injured was employed, and he shows he was not in fault, then the mere fact of the injury raises the presumption that it occurred from negligence of the road, and the road is liable, unless it shows that its agents have exercised all ordinary and reasonable care and diligence, or that the person injured consented to it or caused it by his own negligence, or could have prevented the injury to himself by the exercise of ordinary care."

(5) Because the court charged, at the request of the defendant, as follows:

(*a*) "In a case where there is no call of duty or necessity, and there is a choice on a railroad train between positions of relative safety, it is presumed that a prudent man will choose the one of greater safety; and if one having this choice occupies the position of less safety, the presumption is that he has not exercised the ordinary care enjoined upon him by law. And if, while occupying this position of less safety, he is injured by the negligence of the railroad company, and would not have been injured if

he had occupied a position of greater safety, he cannot re-
cover damages for this negligence."

(*b*) "To apply this proposition to the case on trial: If
you find that Mr. Killian was an intelligent and responsi-
ble man, and there was no call of duty or necessity upon
him to occupy the position on the train from which he was
thrown and killed; and if you find that this position of
standing at the front of the first car of a train of flat-cars
loaded with wood and propelled from behind was a posi-
tion of less safety, and that he, having a choice of positions,
chose this position of less safety, then the presumption
arises that he did not act as a prudent man would have
acted in the same circumstances, and he was wanting in
ordinary care for his safety which was enjoined upon him
by law. Now if you further find that he would not have
been injured if he had chosen a position of greater safety,
it becomes a case where the exercise of ordinary care on his
part would have avoided the consequences to himself of
any negligence on the part of defendant."

(*c*) "If you find that the position Mr. Killian occupied
was wanting of ordinary care for his own safety, it is in no
manner excused or palliated by the fact that others at the
same time were occupying the same or like positions. Or-
dinary care is enjoined by law upon every responsible
being, and the want of its exercise by others is an exam-
ple to be avoided, not followed. The fault of one man is
not excused by the like fault of others, no matter how
numerous the latter may be."

(*d*) " In determining whether Mr. Killian was wanting
in ordinary care for his safety, you will not be controlled
by the fact that he was a railroad man and justified in lay-
ing aside ordinary precautions. The danger inherent to
the running of railroad trains is not less towards a railroad
man than others. A position of danger is none the less
so because occupied by railroad men. Every man is bound
to perform his duty, and if duty calls a railroad man to a
position of. danger, of course it cannot be called a want of

care on his part to assume it; but when duty does not require it of him, a railroad man is just as much bound to take a safer position and avoid a position of danger on a railroad train as any one else."

(e) Mrs. Killian cannot recover for negligence of the defendant railroad if her husband has not exercised every precaution and used every diligence touching his safety that caution and prudence would dictate to a sagacious man. And further, his being an experienced, intelligent railroad man, so far from excusing him from taking precaution for his safety, should teach, prompt and dictate those precautions to him. His experience and intelligence should be used to protect him from injury, not to excuse him from fault."

J. S. & W. T. DAVIDSON, for plaintiff.

JOS. GANAHL; JOS. B. CUMMING, for defendant.

SIMMONS, Justice.

Catherine E. Killian brought suit against the Augusta and Knoxville Railroad Company for damages. She alleged that her husband, John H. Killian, was an employé of the defendant, and while engaged in the performance of his duties as such, without any fault or negligence on his part and by the fault and negligence of the defendant, was thrown from a train of cars and run over and killed. She alleged that the fault and negligence of the railroad company consisted in the violation of the ordinance of the city of Augusta, which prohibits the running of railroad cars through its streets at a greater rate of speed than five miles per hour; in the cars being so run through the streets of said city upon a defective curve, which was not the standard gauge by from half an inch to an inch and a half; in said curve not being properly elevated and lined up by from two to five inches; in allowing dirt, mud, etc. to accumulate in said curve and not keeping the curve clear

and cleaned out; and in not keeping a guard-rail on the lower side of said curve to prevent the wheel from mounting and running off on the upper side of said curve; and that by reason of this illegal running and these defects in the track of said company, the car upon which the plaintiff's husband was riding was thrown from the track and he was killed.

The defendant filed a plea of the general issue, and other special pleas which appear in the record. Upon the trial of the case, the jury returned a verdict for the plaintiff. The defendant made a motion for a new trial upon the grounds set out in said motion, which was overruled by the court, and the defendant excepted and assigns the same as error. The plaintiff also filed a cross-bill of exceptions, alleging errors in the rulings of the court during the progress of the trial, and on certain charges of the court which are set out in the cross-bill of exceptions, and which will be referred to farther on in this opinion.

It appears from the record that the Augusta and Knoxville Railroad Company had only completed its track a short distance, to-wit, from their depot in the city of Augusta to the Sibley mills; that they had not commenced doing a general business; that they had no rolling-stock of their own, but sometimes would hire engines and cars to transport freight from their depot in the city to said Sibley mills. It appears further from the record that Mr. Fisher, a wood dealer in the city of Augusta, had engaged a train of the Port Royal and Augusta railroad (running from Port Royal, South Carolina, to Augusta), and had it loaded with wood or slabs in the State of South Carolina, and transported to the city of Augusta over said Port Royal and Augusta railroad. This load of wood or slabs had been sold or engaged by him to the Sibley mills. Wishing to avoid the expense of unloading from one train and loading upon another after the train arrived at the depot of the Port Royal and Augusta railroad in the city of Augusta, Fisher obtained the permission of Mr. Flem-

ing, the superintendent of the Port Royal and Augusta Railroad Company, for the train to proceed from the depot of the latter, on the track of the Georgia Railroad Company, and thence over the Augusta and Summerville railroad, which connected with the Augusta and Knoxville railroad, and to proceed along the track of the latter road to the Sibley mills. The train consisted of eight flat-cars loaded with wood, pushed forward by a locomotive from behind, and manned by employés of the Port Royal and Augusta railroad. John H. Killian, the plaintiff's husband, was, by direction of Mr. Fleming, the superintendent, to accompany this train to the Sibley mills, for the purpose of seeing that it was unloaded promptly and returned to the Port Royal and Augusta railroad. When the train arrived at the depot of the Augusta and Knoxville railroad, an arrangement was made with Mr. Twiggs, the superintendent of the latter road, for it to proceed to Sibley mills. Twiggs, the superintendent, ordered one Steve Burton to go upon the engine and act as a pilot, and inform the engineer of the curves and " tight places " in the track. Twiggs, together with Killian and two others, mounted the front flat-car, and Twiggs gave the signal to start. The train proceeded from the depot of the Augusta and Knoxville railroad toward the Sibley mills, and when about to reach the curve of the road on Greene street, Burton told the engineer to put on more steam or he would be stalled at the curve. The engineer did put on steam, and the front wheels of the front car ran off on or about the crossing where the curve was situated. Killian and others were standing on top of the wood, and when the front wheels left the track, the standards which held the wood were broken, and the wood fell, precipitating Killian under the wheels of the car, which ran over him and killed him. Twiggs and the others escaped injury. These are the main facts in the case, as disclosed by the record.

1. Under the view which we take of this case, it is unnecessary for us to pass upon each and all of the assign-

ments of error set out in the motion for a new trial. It occurs to us that the case was submitted to the jury by the court on a wrong theory. The court seemed to think that this case was governed by the ruling in the case of the *Macon and Augusta Railroad Company vs. Mayes*, 49 *Ga.* 355. We do not think that the principle ruled in that case is applicable to this case, according to the facts disclosed by the record. In this case, the train, with all the employés necessary to manage it, belonged to the Port Royal and Augusta railroad; and we think that the only duty or obligation owed by the Augusta and Knoxville railroad to these employés, was to have a reasonably safe track over which their cars were to be transported. In the case in 49 *Ga.*, Mayes was acting fireman on a train of the Macon and Augusta Railroad Company, and was injured by that train's coming in collision with the Georgia railroad train, which the Macon and Augusta railroad Company had allowed to come upon their track. In that case, it was not ruled that if any of the employés of the Georgia railroad had been injured, the Macon and Augusta railroad would have been liable, but it was ruled that the Macon and Augusta railroad was liable to third persons and to the public for allowing this Georgia railroad train to come upon its franchise. If Killian had been in the employment of the Augusta and Knoxville railroad, or if he had been a citizen not connected with either of the roads, and had been injured by the running of this train belonging to the Port Royal and Augusta railroad, the Augusta and Knoxville railroad would have been liable, under the ruling in 49 *Ga.* But as he was an employé of the Port Royal and Augusta railroad, whose train had been sent upon the track of the Augusta and Knoxville railroad for the purpose of delivering its freight, we do not think that the latter road is liable to him for any injury, unless it was caused by the defective track or some negligence on the part of the servants of the Augusta and Knoxville railroad. If a person brings his own car to be

transported by a railroad company, that company would certainly not be liable to him for any damages occasioned by a defect in the car itself; but as to third persons, persons not belonging to that particular car, the company would be liable.

As this case is to be sent back for a new trial, we will decide the law applicable to the case disclosed by the record, so that the court may submit the same to the jury in accordance with the views we entertain of the law, under the facts now before us.

We hold, under the facts disclosed by the record, that Killian was not an employé of the Augusta and Knoxville railroad; and therefore the charges of the court as to whether Killian was free from fault and negligence as an employé of the Augusta and Knoxville railroad, and the latter in fault, were not applicable to the case.

2. We hold that he was an employé of the Port Royal and Augusta Railroad Company, and that the only obligation the Augusta and Knoxville railroad was under as to him was to furnish him a safe track on which his train might be safely run. And if the Augusta and Knoxville Railroad Company failed to do this, and he was injured solely by the defect in the defendant's track, the plaintiff would be entitled to recover in this suit.

3. We hold that if the injury to Killian was occasioned solely by a defect in the trucks of the car belonging to the Port Royal and Augusta railroad, the plaintiff would not be entitled to recover.

4. We hold that if the injury was caused both by a defect in the track and a defect in the trucks, then the plaintiff would be entitled to recover in the proportion the defect in the track, as compared to the defect in the trucks, contributed to the injury.

5. The Augusta and Knoxville railroad, as to the safety of its track, was liable to Killian as a passenger; and if the injury was caused solely by a defect in the track, and he was not negligent or could not have avoided the injury

by the exercise of ordinary care and diligence, the plaintiff would be entitled to recover the amount of damages she has sustained. If he was negligent, but could not have avoided the injury caused by the defendant's negligence by the exercise of ordinary care, then the damages should be diminished as in cases of contributory negligence.

6. The defendant in error in this case filed a cross-bill of exceptions on various grounds set out therein, and as the case is to be sent back for a new trial, it becomes our duty to pass upon them.

There was no error in striking from the plaintiff's declaration the words set out in the cross-bill of exceptions. They were totally irrelevant to the case; no evidence could have been introduced to sustain them, and they ought not to have been in the declaration. There was no error in ruling out the testimony of Mrs. Killian going to sustain the allegations stricken from the declaration.

7. There was no error in allowing a second set of cross-interrogatories sued out by the defendants for L. Frank Radford in this case. While it was true that the defendants had crossed the original set of interrogatories sued out for Radford by the plaintiff, yet after they were executed and returned to the court, the defendant wishing to propound additional cross-interrogatories had, in our opinion, a right to sue out additional cross-interrogatories to lay the ground for an impeachment of said Radford, and did not thereby make him its witness.

8. The question as to whether one of the commissioners' taking the interrogatories was attorney for the defendant in this case was submitted to the court, and he having determined from the evidence before him that he was not an attorney, and the evidence sustaining his finding, we do not interfere therewith.

9. We see no error in allowing the answers to the questions propounded to John M. Hayes as to the personal expenses of Killian. We do not think that the rule as heretofore existing in this State limited personal expenses of the

deceased to be deducted from the recovery simply to his food and clothing; but that the personal habits of the deceased, his station in life, his means, and his manner of living, might be proved for the consideration of the jury, and they be allowed to deduct what they might consider. from the testimony to be his reasonable personal expenses, taking all these things into consideration.

10. As will be seen from our views in the former part of this opinion, there was no error in the court's refusing to give in charge the requests to charge of the plaintiff in error in the cross-bill of exceptions.

11. We think the court erred in giving in charge the requests of the defendant in the court below, as set out in the cross-bill of exceptions and marked a, b, c, d and e. The question of what is ordinary care and what is negligence is one exclusively for the jury, and the court in this charge takes this question from their consideration. In the case of *Richmond and Danville R. Co. vs. Howard,* March term, 1887, of this court, (*ante*, 44,) BLECKLEY, C. J., in rendering the opinion, says: " The court cannot instruct the jury what a prudent man would do; for, in legal contemplation, the jury knew it better than the court. If instructions on that subject had to be given, the jury would be the instructors and the court the instructed; that is, the jury would charge the judge on that part of the case, rather than receive a charge from him. It is not for the court to teach the jury the ways of the prudent man, but to warn them of the duty on the part of all others to make their ways like his. The court cannot point out to the jury specifically the ways of the prudent; the law supposing those ways better known to the jury than to the judge."

The other exceptions in this cross-bill are covered by the rulings in the former part of this opinion.

Judgment reversed upon the original and cross-bill of exceptions.