## DE GRAFFENRIED vs WALLACE.

## Opinion delivered October 26, 1899.

1. *Negligence— Duty of Owner renting Building for Public Purposes.*

Defendants leased to the government of the United States a building to be used as a court house. At the time the government went into possession the building was not completed, and defendants continued work on said building. There was a door on the second story opening out of the building, which was to have a balcony attached, but at the time the balcony had not been built. Defendants had securely fastened the door several times, and each time the United States Marshal in charge of the building, had caused it to be opened. Plaintiff in the night time opened this door, and fell to the street below. *Held,* Defendants were not guilty of negligence.

2. *Buildings—Liability of Owner renting Building for Public Purposes.*

The owner of a building rented to the government to be used for public purposes, is liable for the proper construction of the building, but is not liable for defective conditions produced or caused by the lessee after taking possession.

3. *Verdict—Duty of Court to Instruct.*

When the trial court after hearing the testimony would feel bound to set the verdict aside, should it be for the plaintiff, he should direct a verdict for the defendant.

4. *Contributory Negligence.*

Plaintiff, an attorney at law, went in the night time into an incomplete building, and went to the third floor where a client of his was confined as a prisoner. There was a broad stair way leading from the top to the bottom of the building. In coming down, when plaintiff reached the second floor, he thought he was down to the first floor, turned to the left and walked out of a door opening out from the second floor, and fell to the ground. *Held,* He was guilty of contributory negligence and could not recover.

(42)

Appeal from the United States Court for the Central District:

WILLIAM H. H. CLAYTON, Judge.

Action by Robert P. De Graffenried against J. W. Wallace and others. Judgment for defendants. Plaintiff appeals. Affirmed.

This action was brought February 23, 1898, in the Northern district, at Wagoner, Ind. T. Answer was filed March 18, 1898, and on March 24, 1898, on petition of plaintiff, the venue was changed to the Central district, at South McAlester. An amended complaint was filed, and alleged that defendants were the owners of a building constructed for the use of a court house in the town of Wagoner, and were the operators and managers of the same, and the same was being used, by consent of defendants, as such court house by the United States; that on November 22, 1897, by reason of the defective and negligent construction of said building, and while plaintiff was engaged in his professional duties as a lawyer, he opened a door which was unlocked and leading apparently to the street in front and south of said court house, and to which street plaintiff desired to go, and "by reason of the negligence of said defendants in not providing a stairway leading to the street aforesaid, or porch or portico, or other means of safety to prevent one, in stepping from said door in the manner aforesaid, from falling to the street aforesaid, and in leaving said door unlocked as aforesaid, fell a distance, to-wit, twenty feet, to the ground underneath"; that, as a consequence of said fall, plaintiff was permanently and irreparably injured, to his damage $13,000. Defendants, by answer, admit they were the owners of the building, but deny they were the operators and managers of the building, and aver the same had been leas-

ed to the United States, and at the time of the alleged injury the building was under the control of the United States marshal for the Northern district of the Indian Territory; deny plaintiff was injured by reason of the defective and negligent construction of said building, and aver that said injuries were due to the fault of the plaintiff; deny the door was unlocked, or that it led, apparently, to the street; deny that it was by reason of the negligence of the defendants in not providing a stairway or a porch or portico, or other means of safety, that plaintiff fell a distance of 20 feet, and injured himself, as alleged in his complaint. Defendants aver that said door was on the second floor of said building, and was a private door, not for the use of the public, "and, if plaintiff had used proper care and caution, he would have known that said door did not lead out on the street," and aver there was a stairway inside of said building, down which plaintiff could have safely passed, if he had only used proper care and gone down said stairway, "and it was by reason of plaintiff's own fault and negligence in not going down said stairway, instead of opening and walking out of said door, that he was injured, and not by reason of any fault or negligence of these defendants; deny damages in the sum of $13,000, or any other sum, to plaintiff by reason of defendant's negligence, and aver "that, if plaintiff sustained any damage by reason of said alleged fall, it was by reason of his own fault, negligence, and carelessness, and not the fault of these defendants"; deny all special damages; and ask to be dismissed, with their costs. The case was tried by a jury, and, after the evidence had been introduced by both plaintiff and defendants, the defendants moved for a peremptory instruction for a verdict for defendants, which motion was granted by the court, and under direction of the court the jury returned a verdict for the defendants. Plaintiff moved for a new trial, which was overruled by the court, and plaintiff appealed to this court.

*Stuart, Lewis & Gordon, Shackelford & Shackelford,* and *Hutchings & West,* for appellant.

*N. B. Maxey, J. P. Clayton,* and *Benjamin Martin, Jr.,* for appellees.

TOWNSEND, J. The appellant (the plaintiff below) has filed two specifications of error, which are as follows: "(1) The court erred in instructing the jury to return a verdict for the appellees on the ground that it appeared from the evidence that the building from which the appellant fell had been prior to that time leased to the government of the United States, and was at the time of the accident under the control and management of Leo E. Bennett, United States marshal for the Northern district of the Indian Territory, and not under the control of the appellees. (2) The court erred in instructing the jury to return a verdict for the appellees on the ground that under all the testimony the appellant was not entitled to recover, because his injuries were the result of his own contributory negligence, and not of the negligence of the appellees." It appears that the building out of which appellant walked and was injured on the 22d day of November, 1897, was on the 8th day of November previous leased to the government of the United States for use as a court house, and the possession of the same was turned over to the United States marshal for the Northern district of the Indian Territory. It further appears from the record that, at the time the lease was entered into and the possession taken by the government, the same had not been completed, and the defendants were ordered to work in the lower part of the building, so that the court, which was in session, should not be disturbed. The door out of which appellant fell was not completed, as it was to have a balcony attached in front of it, to protect persons from falling; but the defendants, before leaving that part of the building,

securely fastened said door, so that the same could not be used. It further appears, however, that the marshal, being desirous of using said door for the purpose of calling witnesses, removed the fastenings and opened said door. The defendants, finding said door opened, again fastened up the same; and the marshal, finding the door again fastened up, asked the janitor who it was that fastened that door, and, upon being told it was the carpenters employed by defendants, he (the marshal) ordered the janitor to keep that door open, and unless he did so "he would fire him and get some one that would keep it open "

While it is probably correct that the lessors of a building are liable for the proper construction of a building to be used for public purposes, it cannot be fairly contended, and would be positively unjust, that they should be held liable for defective conditions produced or caused by the lessee after taking possession. "It is the party who does the wrong who should be made responsible for the consequences it entails. But, if the nuisance arises solely from the act of the tenant, the landlord cannot be held." Shindelbeck vs Moon, 32 Ohio St. 264; Owings vs Jones, 9 Md. 108; Waggoner vs Jermaine, 3 Denio, 306; Fish vs Dodge, 4 Denio, 311; House vs Metcalf, 27 Conn. 632. The case, above cited, of Shindelbeck vs Moon, seems very much in point. The court in that case say: "A landlord who has demised property, parving with possession and control thereof, to a tenant in occupation, is not responsible for injuries arising from defective condition of such premises, when that defect arises during the continuance of the lease. If the defective condition of leased premises occasions damage, in order to make the lessor or landlord responsible it is not sufficient merely to allege ownership in him, but the special circumstances creating his liability must be averred." "The occupier is prima facie liable, and the owner is not,

*Lessor not liable for defects caused by lessee.*

merely as owner, without fault on his part." Russell vs Shenton, 43 E. C. L. 449.

The law of contributory negligence, which the court below, after hearing the evidence, decided the appellant was chargeable with, is fully stated in the following adjudicated cases: Mynning vs Railroad Co., 59 Mich. 257, 26 N. W. 514, and cases cited; Hutchins vs Wagon Co., 61 Mich. 252, 28 N. W. 85; Bedell vs Berkey, 76 Mich. 435, 43 N. W. 308; Railway Co. vs Whitacre, 35 Ohio St. 627; Railroad Co. vs Calderwood (Ala.) 7 South. 360; Corcoran vs Railway Co. (Mo. Sup.) 16 S. W. 411; Railway Co. vs Gentry (Ind. Sup.) 44 N. E. 311; Fitzgerald vs Paper Co. (Mass.) 29 N. E. 464; McDonald vs Railway Co., 86 Tex. 1, 22 S. W. 939; Busw. Pers. Inj. § § 144, 145.

At the close of the evidence the defendants moved the court to instruct the jury to return a verdict for the defendants, for the reasons: ''First, that it appears from the evidence that the building from which the plaintiff fell had been prior to that time leased to the government of the United States, and was at the time of the accident under the control and management of Leo E. Bennett, United States marshal for the Northern district of the Indian Territory, and not under the control of the defendants; second, that, under all the testimony, the plaintiff is not entitled to recover, because his injuries are the result of his own contributory negligence, and not the negligence of the defendants." When the trial court, after hearing the testimony, Duty of court would feel bound to set the verdict aside, should it be for the plaintiff, he should direct a verdict for defendants. Corcoran vs Railway Co., supra; Coal Co. vs Muir (Colo. Sup.) 38 Pac. 378; Lord vs Refining Co. 12 Colo. 390, 21 Pac. 148; Railway Co. vs Hirst (Fla.) 11 South. 506.

*Duty of court to direct verdict.*

The opinion of the court directing a verdict for the defendants is not preserved by the bill of exceptions, but the

appellees have embraced the same in their brief, and, as it very clearly states the reasons for the court's action, we include the same in this opinion.  It is as follows (Clayton J.):

"I have given to the motion all the consideration I could since it was made, last night, and I have arrived at conclusions which are satisfactory to me.  The motion sets up two grounds for a peremptory instruction to the jury.  The first is that these defendants were lessors of the building; that the building was built for public purposes, had been leased to the United States, and at the time of the accident had been turned over to the United States marshal, the agent of the United States, who was then in possession.  It is claimed that under the circumstances, and under the contract, if the plaintiff has any right of action at all, it would be against the lessee, the United States government, or the marshal in charge, and not against the lessors.  The second contention is that the evidence is so overwhelmingly in favor of contributory negligence upon the part of the defendant as that the court could determine as a matter of law that there was contributory negligence upon his part.

"Upon the first proposition, the evidence shows that the building, when this lease was entered into, and when it was turned over by the lessors to the lessee, was in an incompleted condition; that the doorway through which the plaintiff fell, and received his injuries, was a necessary part of the superstructure, and a proper portion of the building after it should have been completed; that the door was at the end of the hall on the second floor, and had been used for the purpose of calling witnesses, and that there was to have been built a veranda in front of the door, which would have made it safe, but that the building had not progressed so far towards completion as that the time had arrived to complete the veranda when this lease was entered into, and possession turned over to the lessee.  The building was

constructed for public purposes,—a court house. There had been a term of court held there. It had been used for that purpose. Upon the night of the accident the evidence shows that the plaintiff procured a pass to go to the third story, which was used as a holdover or lockup for the prisoners, and went to the third story of the building for a proper purpose, for a legal purpose, for the purpose of consulting with a client; plaintiff himself being a lawyer. It seems from the evidence that a pass was required from the marshal for attorneys who desired to consult with their clients who were prisoners in the third story; that he had procured this pass, and that after night, after everybody except the janitor, perhaps, and the jailer upstairs, had left the building, the lights had all been extinguished, the plaintiff went to the front door, and found it locked. The janitor was called, or some one, who opened the door for him. At least, he entered. He entered in the darkness. There were no lights upon that floor. There were no lights in the halls of either the first or second story. There were no lights in the stairway. He entered the building in the darkness, turned to his right, went up a stairway to the second floor. He there turned to his right, and went a step or two, and went up another stairway, still in the darkness, to the third floor. He saw his client, and then undertook to come down. He came down the stairway, and when he reached the second floor he forgot that he was only at the second floor, and, believing that he had gone down two flights of stairs, when in reality he had only gone down one, he then turned to his left. It was but a step to the opening of the stairway leading down to the left to the front door, and that space was seven feet wide. Instead of turning and going down the stairway, in the darkness he passed by the stairway and walked twenty-one feet to the door on the second floor, out of which he fell to the ground, about eighteen feet below. These are facts, stated briefly.

"With regard to the first proposition, from the authorities read here yesterday, and from the argument, it seems quite clear that where a party builds a building for public purposes, and constructs any dangerous places in it,—builds it so defectively that it will be dangerous to the public,—and while in that condition leases it, and turns it over to the lessee, to be used for public purposes, the fact that it was in that condition would be an act of negligence against any one who should not negligently receive an injury through such defect. The defect was produced or caused by the lessor; it was a defect of his own,—because, when he turned it over to the lessee in its defective condition, that, of itself, was an act of negligence; that is, if it is to be used for public purposes. The difficulty that presents itself here, however, is that this was not a defect in the building. There was no act of negligence in the construction of the building. The door was a proper one. It was only dangerous because of the noncompletion of the building. When the building was constructed, the defendant was guilty of no negligence in placing that door there. If guilty of negligence at all, as far as the construction is concerned, the negligence consisted of not building the portico or veranda, but the time to have constructed the veranda had not yet arrived. Therefore there was no negligent defect in the building. There was no such defect in the construction of the building as to make it dangerous, or as to charge the defendants with any negligence, so far as the construction is concerned. I think that that will be generally conceded. As far as the construction of the building is concerned, it cannot be charged that the defendants were guilty of negligence, because they were building a proper building. The doorway through which the plaintiff fell would have been a proper doorway when the building should have been properly completed. Now, then, the next question is, was it negligence on the part of the defendants in allowing the doorway to remain in the condition

in which it was during the time that they would be required
to have in the completion of the building? And were the
defendants, under the circumstances, chargeable with keep-
ing that door in proper condition? The contract provides
that the lessors shall complete the building; that they shall
make all necessary repairs, and keep the building in repair.
Now, then, so far as the completion of the building was con-
cerned, it was in their possession for that purpose. It was
in the possession of these defendants for the purpose of
completing the superstructure. I think that during the
time a public building is in the hands of a contractor, or of
the lessor, while he is finishing the building, it would be his
duty—a duty that the law would impose upon him—to keep
all dangerous places in safety during the time that it might
be in his possession for that purpose, and he must see to it
that it is as safe as ordinary prudence would require. But
the testimony in this case shows that, when this contract
was entered into, the upper portion of this building, includ-
ing the floor that contained this door out of which the
plaintiff fell, had been turned over to the marshal; that there
was to be a court there, and that the lessor was not to do
any work upon that part of the building until after the court
should adjourn; that he was to work on the lower portion;
and the testimony shows that when he left this part of the
building to go down to the first floor, where he would not
disturb the court, he fastened the door; that he placed it in a
condition where it could not be opened; that he placed a bar
across it, or a timber which he nailed to the floor, and left it
in that condition, so that it was safe, as far as the public
was concerned, unless it should be changed by some one.
Now, then, the question arises, whose duty, after he had
left the door in a condition of safety,—whose duty was it to
keep it in a condition of safety? Upon whom did the duty
of inspection devolve? That is a more difficult question, to
my mind, than any that has been propounded,—whether it

was the duty of the marshal to inspect and see that the door was kept in proper condition, or whether it was the duty of the contractors, under the peculiar circumstances of this case. The lessor is responsible for all defects that were in the building at the time it was turned over to the lessee,— such defects as were created by him at the time of the lease, and, if the duty devolved upon him to keep it in repair, such defects as might thereafter arise by use or decay. But I take it for granted, also, that the lessor is not responsible for any mantraps that may be set around a public building by the lessee. I take it for granted that, if the lessee produced a dangerous condition, the lessor would not be responsible. Suppose that the door at the end of the hallway, through which the plaintiff fell, had been solid masonry, and, after it had been turned over to the marshal, that for the convenience of the public or for the convenience of the court he concluded that he must have a doorway in there, so that he might go out and call witnesses, and the marshal should make the doorway without the knowledge or consent of the lessor; would it be contended that the lessor would be responsible if any one received an injury on that account,— from a condition created solely by the lessee after the building had gone into his hands? Would any one say that the lessor's duty of inspection would carry him so far that he must rebuild that place and fasten it up? I think not. I think that in a case of that kind the lessee would be responsible, and not the lessor. In reason, I feel quite clear he would; and reason is law. Now, then, in that case, if the doorway was fastened, as is contended by the defendants, and if he left it in a safe condition, and the marshal, in order that he might more conveniently transact his business, directed that the door should be opened, is the lessor responsible for that act? He has done his duty, and, as far as he was concerned, this was a place that he had left there properly,—a place that had been properly put there, and,

when the proper time came, he intended to make safe by the building of a veranda. Awaiting that time, he had fastened up the door, when the lessee came into possession and tore down what the lessor had done. Now, I hardly think,— although it may be a question of some doubt,—I hardly think that the law would hold the lessor responsible. He was not to be about that portion of the building during that time. I have come to that conclusion upon the first branch of the case.

"Upon the second branch of the case I am, I believe, clearer than I am upon the first. The building, it is true, was a public building; but when this accident occurred the time had arrived when the parties who were in the building had left, and the building was locked up for the night,—a time when no man would reasonably be expected to visit such a place. The plaintiff secured permission to go into what he knew was an unfinished building He knew it to be unfinished, or is held to have known it, because it was patent to everybody; and he undertook to enter the building in the nighttime, to roam through it, to go through its halls and climb its stairways, without guide or without light,— eeling his way in the darkness to get to the third story. Then, after he had succeeded in that, started again, in the darkness, to go down through that, as I have said, incompleted building, without taking with him a light or any means of observing. He goes down to the second floor, and forgot that there was another floor,—another stairway, erected for the purpose of taking him down, only three feet to his left. He testified that he kept his hands upon the wall until he got down upon the second floor. If he had his hand upon the wall, dark as it was, it would have directed him squarely to the front entrance below, and it would have directed him away from the door at the end of the hall; but his testimony is that (by inattention): 'I forgot that I had only gone down one flight of stairs. I forgot that I was

on the second floor, and thought I was on the first floor, and was thinking of my client, and my mind was away; and through inattention I passed by that seven-foot opening that would have led me to safety, and went twenty-one feet to a door, and fell to the street below.' I cannot think that the law charges the defendants with any duty to him under those circumstances. It does seem to me that where a man undertakes to go through a strange building, an incompleted building, and climbing its stairways, and going through its dark halls and passageways, up and down dark stairways, that at least he ought not to be inattentive, when that inattention results in mulcting some one else in a large amount of damages. The law says that you must not be inattentive, you must not lose your mind, but you must be attentive, before you can charge other men with negligence. I repeat, I cannot see how it can possibly be construed that while this plaintiff, inattentive and with a wandering mind, was roaming and rambling around through these dark rooms and corridors, how it is that these defendants owed him any duty, except the duty they had already performed, of giving him a seven-foot stairway to go down to a place of safety. This is the way it presents itself to my mind, and that I believe to be the law in this case. I think I am right upon the first proposition, and I feel quite certain—at least, I am satisfied—that I am right upon the second proposition. I think the testimony here is overwhelming that the plaintiff was negligent. The testimony of the plaintiff himself shows that fact. Of course, it is unfortunate for a man to meet with such an accident, but at the same time that is not the question. The question is, who is to pay for it?—whether it is one of those injuries he has received for which he can get no recompense, or whether he can hold some one else responsible. From this view of the case, it does not matter that the defendants may have been negligent, because, if the plaintiff has been guilty of contributory negligence, he

cannot recover. It is said in argument, and very properly and correctly, that, before the defendant can relieve himself upon the ground of contributory negligence, it must be shown that the negligence of the plaintiff directly contributed to the injury. In this case, if the plaintiff had not been negligent the accident would not have occurred. His acts were the direct cause of the accident. I will instruct the jury to return a verdict for the defendants."

We are of opinion that the judgment of the court was correct, and it is therefore affirmed. Affirmed.

SPRINGER, C. J , and THOMAS, J., concur.