Decided 5 July, 1904.

## MASSEY *v.* SELLER.

[ 77 Pac. 397, 16 Am. Neg. Rep. 553.]

NEGLIGENCE — DUTY OF OWNER OF DANGEROUS PREMISES.

1. An occupant of premises on which there are dangerous places—like an unguarded elevator shaft, for instance—who invites others to enter, owes them the duty of warning as to such places.

NEGLIGENCE — DUTY OF COURT — QUESTION FOR JURY.

2. Where there is no dispute as to the facts and the deduction therefrom is very clear, the court should state to the jury whether the facts show either negligence or contributory negligence.

OPEN ELEVATOR SHAFT — CONTRIBUTORY NEGLIGENCE.

3. Where one who was in a strange building saw a dark place in a corner, and walked into it without determining what was there, and was injured by falling down an open elevator shaft, he was guilty of contributory negligence, precluding recovery.

From Multnomah: MELVIN C. GEORGE, Judge.

This is an action in tort by P. M. Massey against M. Seller and others, arising on account of the alleged negligence of the defendants in maintaining an elevator or hoist in their store building for the purpose of transferring merchandise from one floor to another. It is averred that the elevator was not inclosed in a shaft, and that it had no guards, railing, gate, trapdoors, or other protection, on account of which the plaintiff, without fault on his part, was precipitated down the open space, resulting in his injury. The defendant set up contributory negligence on the part of the plaintiff. A nonsuit having been granted on motion of the defendants, plaintiff appeals.

                                                  AFFIRMED.

For appellant there was a brief over the names of *Daniel R. Murphy* and *George A. Brodie*, with an oral argument by *Mr. Murphy*.

For respondents there was a brief over the name of *Hogue & Wilbur*, with an oral argument by *Mr. Ralph W. Wilbur*.

MR. JUSTICE WOLVERTON, after making the above statement, delivered the opinion of the court.

The question presented for our consideration arises upon the nonsuit, and, to be understood, requires a statement of the facts developed by the evidence. By agreement of the parties a map of the ground plan of the store building in which the accident occurred was considered in evidence. The building extends from Front Street on the east, along Burnside Street on the north, to First Street on the west. The regular entrances for customers are from the east, but there is also an entrance way from the west. The main business office is situated near the center of the building, with its westerly wall approximately at the center, the entrance thereto being from Burnside Street, and the manager's office set off from this in the southeast corner. West of and adjoining the business office is the shipping room, having an entrance from Burnside Street, through which there appears to be a slight incline from the sidewalk. The room is approximately sixteen by twenty-eight feet, extending lengthwise with Burnside Street. In the southeast corner is the shipping clerk's office, approximately six by eight feet, possibly six by nine, situated lengthwise with the room. Next to this on the north is the elevator shaft, of about the same dimensions, the westerly end extending out even with the shipping clerk's office. This shaft appears from the map to be inclosed on the south by the office partition, on the east by the partition between the shipping room and the main

business office, and on the north by a wall running up with the shaft. The latter inclosure is two feet four inches from the outside wall of the building, and extends slightly, from eight inches to a foot, past the easterly jamb of the doorway from Burnside Street. On the west there is no inclosure whatever to the shaft, the entire width being without gate or guard rails to impede entrance therein from the main floor of the shipping room. On the opposite side of the shipping room from the entrance from Burnside Street is a door leading into the main westerly room of the building, which is designated as "Display Room — Tinware Dept." This door is situated four or five feet farther west than the main entrance, so that one crossing from the display room to the outside entrance would pass in a diagonal direction across the shipping room, approaching the elevator shaft, but leaving it clearly to the right from the nearest point of contact.

The plaintiff was an employé of another wholesale house, and is the only witness who testified to the circumstances of the accident, which occurred about 11 o'clock in the morning. He was sent to the house of the defendants to exchange eighteen or twenty cases of fruit jars. He first drove to the front of the building on Front Street and entered by that way, going around the shipping clerk's office to ascertain about the jars, but, being afraid to leave his horse standing, went out the way he came, and drove around on Burnside Street, and hitched the horse to a telegraph pole. From this point his jars were deposited on the outside of the shipping room, whereupon, by request of the clerk of the defendants, he entered the shipping room and assisted in loading jars from that room, which were upon the opposite side of the door from the shaft, upon his wagon. Finding that defendants did not have at the building a particular size of the jars that was wanted, the clerk, while with plaintiff on the outside of

the shipping room upon the sidewalk, said to him that they would have to go over to Fifteenth and some other street, the name of which plaintiff did not catch, to get them, and went immediately back through the shipping room, the plaintiff following, passing into the display room or tinware department toward First Street. When they had continued some little distance therein, the plaintiff, finding that the clerk was getting ahead of him or was going too fast, concluded to turn about and await his return on the outside. He testified, using his own language: "So I turned to go outside of the door, to get outside again. I came pretty near to the door, and looked in there. It was a little dark in there. I didn't find him. I thought maybe I would find a water-closet in there, because I wanted to go to the closet, and I made a step or two, and I went right into the elevator." Later, he continues, relative to the same incident: "But when I got here, I seen this dark place. I had not been there. I thought it was a closet, and I had been working hard, and wanted to go to the closet, * * and I walked right into it." And, as to the condition of the room : "It seemed very dark to me. I could not say — I never noticed inside the building enough to know — but it seemed very dark to me in there; but to say whether there were any windows or not, I could not say. I know it seemed dark to me after coming out of the light." On cross-examination he further testified, relative to the time of turning back: "I was going outside, but I thought that I could get to the closet. Q. On your way back, how long did you stop in the shipping room ? Did you stop there at all ? A. No; I walked right back and went off. * * Q. Your remembrance of it is that you passed right back here ? A. Yes. Q. What made you think the water-closet was in that place ? A. It was a dark, desolate looking place. It was a dark corner, * * and I thought from the looks of it

there might be a closet there. Q. Did you pay much at-
tention where you were going? A. I was not looking for
a trapdoor to fall in, but I could see nothing. * * It
looked dark. It looked just like a dark corner. Q. What
attention did you pay to where you were going? A. I
just looked back; simply glanced back. * * Q. Did you
look carefully to see? A. No, I don't think I looked; but
it was dark in there, a dark corner." He further testified
that it was a bright, sunshiny morning, that the door en-
tering from the street was a good-sized one, but that he
did not pay any particular attention to it, because he was
in a big hurry, and that he did not ask any one where to
find a closet.

1. This comprehends the gist of the testimony, and the
pivitol question in the case is whether the plaintiff has
been guilty of such contributory negligence as will pre-
vent his recovery. It may be assumed that it was the
duty of the defendants to warn plaintiff of the danger or
apprise him of the unguarded elevator shaft when in-
ducing him to enter the shipping room to make the ex-
change or transfer of the fruit jars, that it was a duty they
owed him, and that they were negligent in the nonob-
servance of it; but was their negligence the proximate
cause of the injury, or was it the contributory negligence,
if so found to be, of the plaintiff? "Although," says Mr.
Justice LORD, in *Walsh* v. *Oregon Ry. & Nav. Co.* 10 Or. 250,
253, "the evidence may disclose the defendant to have
been guilty of negligence, it will not excuse negligence or
the want of proper care and precaution on the part of the
plaintiff. The law will not permit a recovery where the
plaintiff, by his own negligence or carelessness, has con-
tributed to produce the injury from which he has suf-
fered." If allowed to recover in such a case, he might,
as observed by Mr. Justice STRONG, in *Heil* v. *Glanding*,
42 Pa. 493 (82 Am. Dec. 537), "obtain from the other

party compensation for his own misconduct"; and the result will be the same if such negligence or carelessness be made to appear by plaintiff's own proof, offered for the purpose of establishing defendant's culpability: *Tucker* v. *Northern Term. Co.* 41 Or. 82 (68 Pac. 426, 11 Am. Neg. Rep. 629). Generally speaking, the question of what is ordinary care and what is negligence is one exclusively for the jury. It carries with it the inquiry as to what a prudent man would have done under like circumstances, and it is not for the court to teach the jury the ways of the prudent man; for the latter, in legal contemplation, are better qualified to speak and judge of that than the court: *Richmond & Danville R. Co.* v. *Howard,* 79 Ga. 44 (3 S. E. 426); *Killian* v. *Augusta & K. R. Co.* 79 Ga. 234 (4 S. E. 165, 11 Am. St. Rep. 410).

2. There are three conditions which must obviously take the question of negligence, or its counterpart, contributory negligence, to the jury: (1) Where the facts which, if true, would constitute negligence are disputed; (2) where there might be a fair difference of opinion whether the inference of negligence should be drawn from undisputed facts; and (3) where both the facts and inference are legitimate subjects of controversy: *Hathaway* v. *East Tennessee R. Co.* (C. C.) 29 Fed. 489. When, however, the facts are unchallenged, and are such that reasonable minds could draw no other inference or conclusion from them than that the party whose acts are in the balance was or was not at fault, then it is for the court to say as a matter of law whether such acts constitute negligence, or contributory negligence, as the case may be: Beach, Contrib. Neg., (2 ed.) §§ 446, 447; 1 Shearman & Red., Negligence, (5 ed.) § 56; *Walsh* v. *Oregon Ry. & Nav. Co.* 10 Or. 250.

3. Now, to apply these principles: The acts of the plaintiff are entirely undisputed, at any rate they must be so

taken and considered for the purposes of the nonsuit; for the motion operates as a demurrer to the evidence, conceding its truth, and we have but the simple question left whether there can be two inferences from the testimony for reasonable deduction. It is plain that, if plaintiff had pursued his first purpose on turning back from following the clerk and gone outside the building, there to await his return, the accident complained of would not have happened, for the elevator was entirely clear of the passageway from the inner door of the shipping room to the outer door. If blinded somewhat, as he says he was, by coming from the bright sunlight into the building, that could not have stood in his way or confused him in the least, as he was going toward the light admitted into the room by the door through which he was intending to pass out, and a direct course would have taken him to the outside safely. But in approaching the outer door he observed "this dark place," as he terms it, and, wanting to find a water-closet, walked right into the shaft, without knowledge of its existence. He says: "It was a dark, desolate looking place. It was a dark corner, and I went back once before to just about such a place and found a water-closet, * * and I thought from the looks of it there might be a closet there. * * I was not looking for a trapdoor to fall in, but I could see nothing." Now, if it was so dark in there that he could "see nothing," it was certainly an act of folly on his part to enter on a cruise of exploration and discovery without stopping to determine whether it was safe to proceed. To bolt headlong into a place little known, and where the senses can not take note of it, is not the act of a prudent man, and there is no chance for any other inference or deduction concerning it. Reasonable minds could not come to any other conclusion touching it, so that there is nothing for

the jury to .determine, and the trial court very properly declared the result as a matter of law.

In *Johnson* v. *Ramberg*, 49 Minn. 341 (51 N. W. 1043), contributory negligence was imputed to plaintiff for not having looked where he was going in the light. Having entered a warehouse in which he had never been before, and meeting the defendant, he turned aside for him to pass, and in doing so stepped off the head of a pair of stairs. It was held that the bare statement of the facts, together with the admission of the plaintiff that he could have seen the stairway if he had looked, and did not look, was proof inhibitory of his recovery. It was there observed, that, "while the plaintiff was permitted to pass through the wareroom into the store, he could not but know from the surroundings that the place was not a passageway merely, but that it was also largely, if not principally, devoted to the private uses of the proprietor connected with his business; and the plaintiff was not justified, either in closing his eyes as he went through, or in neglecting to observe where he went. He was not justified in assuming that the place was so free from obstacles and from the ordinary conveniences for business that he could move anywhere without paying any attention to the surroundings." In *Bedell* v. *Berkey*, 76 Mich. 435 (43 N. W. 308, 15 Am. St. Rep. 370), the plaintiff attempted to enter a building by a way with which he was not familiar. To illustrate the condition, we quote from his testimony. He says: "I saw a little light shining through here, ahead of me, just a dim light, and I walked up here, saw this light, took it to be an opening between the door, between the two sections, the middle and the north sections. I turned to my right, and, as I supposed, was going through into this department through a door, and I stepped into a hole." The court, in deciding that the case should not have been left to the jury on account of the contributory

negligence of the plaintiff, says, among other things: "It was his business, if he found it [the room] obscure, to wait until his eyes got accustomed to the light before moving round at haphazard, without using any care whatever to know where he was going. No one has any right to endanger himself, or to disturb other people's arrangements, by moving round in the dark—if it is dark—in a strange room, into which he has entered of his own accord and without direction." And in *Hutchins* v. *Priestly E. W. & S. Co.* 61 Mich. 252 (28 N. W. 85), it was held that it was contributory negligence as a matter of law for a person to atttempt to pass heedlessly through an elevator shaft, supposing it to be a doorway. The principle is further illustrated by the case of *Hilsenbeck* v. *Guhring*, 131 N. Y. 674 (30 N. E. 580).

There is a distinction to be observed, we are aware, between the rights and responsibilities of a person who is a mere licensee, and one who comes upon premises or into a building of another through invitation or inducement of the owner, express or implied. The former takes the premises as he finds them, but the latter is entitled to the observance of due care and considerate precaution on the part of the owner for his safety and protection against accident: *Indiana, B. & W. Ry. Co.* v. *Barnhart,* 115 Ind. 399 (16 N. E. 121); *Faris* v. *Hoberg,* 134 Ind. 269 (33 N. E. 1028, 39 Am. St. Rep. 261). But, having fully in mind this reasonable distinction, we are nevertheless of the opinion that the plaintiff was guilty of contributory negligence. He was in the room by express invitation, it is true; but the purpose for which he had been invited in there had been subserved, and he was not about the business that called him in at the time he was injured. We place no stress on this fact, however, and it may be conceded that he was still in the shipping room by invitation. However, by his own statement, and it is all there is in the

case upon the subject, he passed back into the shipping room from the display room with the express purpose of passing through it to the outside. If he had continued in his course, he would have passed out with perfect safety; but, desiring to get to a closet, he precipitately changed his purpose, and, noticing a dark corner, where he could see nothing, as he says, walked right into the elevator shaft without heeding his way, and the result was the injury of which he complains. He could not have been injured if he had paid the slightest attention to where he was going, or if he had not bolted headlong into the dark corner. ·He made no inquiry touching the object of his quest, and was heedless in proceeding in the dark without observing where he was going.

From this plain state of the facts, about which there can be no cavil, we are firmly impressed that the plaintiff's acts constitute contributory negligence as a matter of law, and he cannot for that reason maintain the action. The judgment of the trial court will therefore be affirmed.

AFFIRMED.

---

Decided 27 June, rehearing denied 1 August, 1904.