## Louis F. Brehmer *vs*. Whitelaw Lyman, et al.

May Term, 1898.

Present: Ross, C. J., Taft, Rowell, Tyler and Start, JJ.

Opinion filed October 3, 1898.

*Negligence—Expiration of License.*—Case for negligence against the owner of a building in which the plaintiff was injured by falling through an opening in the floor. The room was being used for rehearsals by an amateur dramatic company under a license from the owner which by its terms was to expire when it became necessary to repair the room. The plaintiff was a musician employed by the company. The repairs had been commenced before the accident occurred, and the opening had been made in the course of them. *Held*, that the plaintiff was a trespasser, and the suit without foundation,

Case. Plea, general issue. Trial by jury at the September term, 1897, Rutland county, *Munson*, J., presiding. The jury after due deliberation failing to agree, a verdict was directed for the defendant, and the plaintiff excepted.

*J. A. Merrill* and *G. E. Lawrence* for the plaintiff.

*Butler & Moloney* and *J. C. Baker* for the defendant.

Start, J. The action is case, for the recovery of damages sustained by the plaintiff by reason of falling through an opening in a block where the floor had been taken up to make repairs. The court ordered a verdict for the defendants, to which the plaintiff excepted.

The general situation and condition of the building were not in controversy. The injury was received in a three-story brick block, known as the Billings block. The defendants, Betsey C. Sparhawk and Vida Billings Grout, were the owners of the block, and the defendant, Milo Lyman, was the superintendent of the repairs being made.

The Billings block was originally a three-story brick block. The lower floor was divided into two stores, with a

stairway between them leading from the sidewalk on the street to the second floor. The third floor was used by the lodge of Odd Fellows for a hall and other rooms. To increase the size of the store on the south side of the stairs, and to furnish another room for that store, a wooden addition was built several years ago, against the rear of the block. This addition was of the height of the first story only and had a tin roof. Some three or four years before the injury complained of, the owners of the block erected a frame addition to the block. In the erection of this addition, the one-story addition first referred to was not torn away, but the new one was built over and around it. On the second floor, the room of this addition was unfinished, except that a floor was laid in it, and it was partly lathed. A doorway was cut from the rear end of the hall leading into the unfinished room in the second story of the addition, and a floor was laid for a passage over the roof of the old addition from the hallway in the brick block to this unfinished room. This unfinished room was used as a store-room by the tenants of the block, and, in the summer of 1895, had considerable rubbish in it.

In the season of the year 1895, Wayne Bailey was the agent of the owners of this Billings block, and had the entire care and management of the block and of the renting of the rooms in it. It had been determined by the owners to have extensive repairs made upon the block that season, and Mr. Bailey had charge of them. Among the repairs to be made, according to the plan adopted, was the extending of a light-well from the store, through the second and third stories to a sky-light in the roof. This light-well was to occupy the space of the roof of the old first addition, and be extended therefrom to the sky-light. This required an overhauling of the Odd Fellows' hall and rooms, and a taking out of the floor where said passage-way was which led into said unfinished room and the old roof under it.

Before the floor in question was taken up, Mrs. Balcom

made application to the lodge of Odd Fellows to produce, under the auspices of the lodge, a dramatic musical entertainment, and terms were agreed upon. The Odd Fellows appointed a committee, consisting of Dr. Spencer, Dr. Martin and Mr. Carruthers, with power to act for the lodge. Mrs. Balcom was to furnish singers and drill them, and the committee was to furnish the orchestra and do the outside business. Mrs. Balcom held a few rehearsals in the Odd Fellows' hall and afterwards went into the unfinished room on the second floor of the block to hold them. No evidence was introduced tending to show any arrangement as to the use of the room, except a conversation between Dr. Marstin and Mr. Bailey. Dr. Marstin testified upon that subject as follows:

"I saw Mr. Bailey and asked him if this committee, or Mrs. Balcom, could have that room down there to rehearse in. I asked him if we could hire it; he said, 'no, you can have it and welcome until they go to making repairs; they are going to making repairs soon, and you can have it until then, if you have a mind to clean it out.' There was some rubbish in there."

*Q.* "Had you any notice whether after that you did take possession of it as such committee, direct the use of it for the purpose of these rehearsals?"

*A.* "We did take possession of it and used it."

*Q.* "When did you begin—When was this conversation with reference to the time this accident occurred, which was the twentieth of September?"

*A.* "Somewhere about a week or ten days previous to that."

*Q.* "At the time you had the talk with Mr. Bailey to procure the use of this room, that matter of changes and putting in this light, it was talked over and considered?"

*A.* "Yes, sir. It was talked over."

Dr. Marstin further testified that he told Mr. Bailey that Mrs. Balcom wanted the room, and no arrangement was

made for the Odd Fellows; that the Odd Fellows, or the committee, had nothing to do with it; that he told Bailey that he wanted that room for Mrs. Balcom, and did not think he told him he was a committee of the Odd Fellows; that what Bailey said was that they could have the room, and welcome, until it was wanted to commence the repairs; that the witness told Mrs. Balcom what arrangement was made with Mr. Bailey, and that they could have the use of the room until they commenced the repairs. The witness also testified that he knew the repairs were commenced before the plaintiff received his injury; that they had commenced repairs before the accident, and had torn up the floor going into this room; that the repairs Mr. Bailey and he talked about were the putting in of the light-shaft, and he knew they had been at work on that for some time, more or less; that he knew that those repairs would necessitate the tearing up of the floors of both stories; that he understood Bailey to mean the putting in the light-shaft as the repairs referred to; and that he understood the license terminated when they wanted to put in the shaft, which would prohibit going into the room.

Mr. Bailey testified to the conversation substantially the same as Dr. Marstin, and that Dr. Marstin knew of the plans for repairs. He gave the conversation more in detail, but to the same effect. This was all the evidence there was upon the subject of any conversation between any one and the owners of the building or their agents, as to the use of the room.

On the evening of the accident, when Mrs. Balcom went to the room, the floor of the passage-way was taken up, the boards thrown into the room that had been used for rehearsals, and plank laid across the passage-way to this room. Mrs. Balcom testified that Mr. Moore told her that it was a dangerous place, that she could never rehearse there and that she replied, "I can fix that."

William P. Horton, the Noble Grand of the lodge, came

upon the scene soon after Mrs. Balcom. He found this floor up and the situation as it stood when Mrs. Balcom got there, and at her request, he fixed the passage by making a temporary bridge or floor, and set up a board at each edge.

The testimony of the plaintiff tended to show, that he was a member of a band of musicians, of which his brother, Philip H. Brehmer, was the leader; that said leader had been employed by the committee of Odd Fellows to furnish an orchestra for the entertainment aforesaid; that, on the evening of the 20th day of September 1895, the plaintiff was directed to attend a rehearsal in the unfinished room on second floor of the Billings block, to be conducted by Mrs. Balcom; and that about nine o'clock in the evening he went in accordance with said order, and in going to said room over a temporary flooring, put down in said passage-way, said old roof and flooring over the same having been removed, the plaintiff fell, or was thrown off the passage and into the store below, and suffered the injuries complained of.

Giving the testimony the most favorable construction for the plaintiff, it shows that the only right Mrs. Balcom or any other person connected with the entertainment had to the room, was a naked license to use it for rehearsals until the repairs, which required the floor of the passage and old roof to be taken out, commenced; and when the defendants commenced the repairs, the license terminated by its own limitation. While the license was in force, it relieved the licensee from liability for entering and occupying the room; but, when the license terminated by its own limitation, all attempts to use the room for rehearsals were acts of trespass and wholly without right.

The plaintiff was not on the defendants' premises by their invitation, permission or procurement. He was there by the invitation of the party whose license to use the room had terminated by its own limitation, and the defendants owed him no duty of protection against such accidents as might

happen to him by reason of the unsafe and dangerous condition of the passage-way. *Fay* v. *Kent*, 55 Vt. 557; *Stevens* v. *Nichols*, 155 Mass. 472; *Metcalfe* v. *Cunard Steamship Co.*, 147 Mass. 66; *Reardon* v. *Thompson*, 149 Mass. 267; *Bedell* v. *Berkey*, 76 Mich. 435: 15 Am. St. 370.

Negligence consists in the commission of some lawful act in a careless manner, or in the omisssion to perform some legal duty to the injury of another. It is essential to a recovery in the latter case, to establish that the defendant owed, at that time, some special, clear, legal duty to the plaintiff, or the party injured. *Nicholson* v. *The Erie Railway Co.*, 41 N. Y. 529.

To authorize the submission of the question of liability to a jury, in an action for negligence, the evidence must fix or tend to fix upon the defendant some personal fault, or its equivalent. *Martin* v. *Pettit*, 117 N. Y. 118. The evidence did not tend to fix upon the defendants, or any of them, any legal duty respecting the matter complained of, and the court properly ordered a verdict for the defendants.

*Judgment affirmed.*