FRANK B. DAWSON ET AL. v. ST. LOUIS EXPANDED METAL FIREPROOFING COMPANY.

No. 991. Decided March 7, 1901.

**Jurisdiction of Supreme Court—Opinion Settling Case.**

Where the Court of Civil Appeals reverses and remands, holding the evidence, which was conflicting, insufficient to support the recovery, but not instructing the court below to direct a verdict should the evidence be unchanged, nor holding the case to present an absence of evidence, the appellee can not give the Supreme Court jurisdiction to grant writ of error by alleging that this practically settles the case and that he can procure no more evidence. Choate v. Railway, 91 Texas, 406, followed, and Lee v. Railway, 89 Texas, 583, distinguished. (Pp. 428-430.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Dawson sued the St. Louis, etc., Company and obtained a judgment against it which the company carried by writ of error to the Court of Civil Appeals, where it was reversed. Dawson then obtained writ of error from the Supreme Court on the allegation that the opinion practically settled the case.

*Summerlin, Walling & Norton,* and *James Routledge,* for plaintiffs in error.

*P. H. Swearingen,* for defendant in error.

The opinion of the Court of Civil Appeals was as follows:

"NEILL ASSOCIATE JUSTICE.—This suit was brought by the defendant in error, F. B. Dawson, against Peter T. Shields and plaintiff in

error, an independent contractor, for damages for personal injuries caused by the alleged negligence of Shields and the company by reason of laying a cement floor, and prematurely removing supports from thereunder, and ordering defendant in error to go thereon and do a piece of work. The plaintiff in error answered by special exceptions, and alleged that it was an independent contractor, and owed defendant in error no duty; that it was guilty of no negligence; that he was a trespasser, assumed the risk of going on the floor, and was guilty of his own negligence. The case was tried before a jury, and a verdict rendered in favor of defendant in error against plaintiff in error company for $5600, and against defendant in error in favor of Shields. From the judgment rendered on the verdict the company alone has appealed.

"Peter T. Shields had a contract to build the north wing of the Southwestern Insane Asylum. He sublet the part of it for the construction of the flooring to plaintiff in error. The latter gave its written guaranty to the former that the flooring, when completed, would sustain a weight of 200 pounds to the square foot, and have a factor of safety of four. The flooring, as required by the contract, was constructed between iron joists of extended iron, and of concrete composed of sand, cinders and cement. In order to lay the concrete material, a false flooring of plank was screwed with bolts to the iron beams, and supported by skids resting upon the ground or floor beneath. This scaffolding was, under the supervision of the company, constructed by Shields' employes, and when it had served its purpose was by them, on the order of the company, removed, when the concrete had sufficiently undergone the process of hardening. After the second floor of the building had been constructed in this manner by plaintiff in error, and the scaffolding removed, it was discovered that a panel—which is about five feet square—of the floor was defective, in that the cement had cracked. On the Thursday before the accident hereinafter related occurred, Shields ordered the representative of plaintiff in error company to take out that panel, and immediately construct a new one instead. From the time that the scaffolding was removed from underneath until about the time the order to repair the panel was given the floor may have been used by Shields' employes in performing their work upon the building. But at the time Shields ordered the panel repaired his hands had no work to do in that part of the building, but were working in the south wing and hospital of the asylum. The plaintiff in error, as ordered by Shields, proceeded immediately thereafter to replace the defective panel by constructing a new one, which was done in the same manner, and composed of the same material, as the balance of the floor. It was finished in the afternoon of the next day. About 5 o'clock on Saturday, the 22d day of October, 1898, the day after the panel was finished, the defendant in error and another of Shields' employes were sent by their foreman, who had been requested by Dr. McGregor, the superintendent of the asylum, to plank up a

door in the wall immediately opposite the panel which had been relaid, to close the opening as requested by McGregor. At that time the scaffolding had been removed from underneath said panel. The evidence shows that Shields' employes had no right to use the floor for any purpose until the cement composing it had become fixed and hardened, and that it took from three to five days, dependent upon the kind of weather, for it to become in such condition. When defendant in error was sent to plank up the door, he was not informed by anyone, and had no knowledge, that the panel near the door was new and not sufficiently fixed and hardened to be used as a place for the work he was sent to do, nor did he know that the scaffolding had been removed from thereunder. The surface of the panel seemed dry, and did not present to him an appearance different from the balance of the floor. The plaintiff in error nor its servants knew or had any reason to believe, so far as the evidence discloses, that Shields' servants would have any occasion to use the newly constructed panel, or any part of the floor, as a place for work during that day, or until the concrete composing such panel had become fixed and hard. Nor did the company or its servants know that defendant in error, or any other of Shields' servants, had been ordered to plank up the door near said panel. In fact such work does not seem to have been contemplated either by Shields or his foreman until Dr. McGregor requested the latter to have it done. No signals were placed out or given either by plaintiff in error or any one else to indicate the panel was unstable or dangerous for parties to stand and work upon. While defendant in error and his coemploye, as directed by their foreman, were planking up the door,—the latter standing upon the head of a whisky barrel, the other end of which rested upon the new panel, and the defendant in error upon the floor, assisting him,—the panel, not having sufficiently hardened to support them in doing such work, gave way, and both were precipitated to the floor below, and defendant in error sustained the injuries for which he claims the damages sued for.

"The question for solution under these facts and circumstances is, did the plaintiff in error company owe the defendant in error any duty? If it owed him no duty, it incurred no liability for his injuries. A party sought to be charged for suffering a place to be in a dangerous condition, whereby an accident has been occasioned to another, can only be held liable for doing or omitting to do an act by which a legal duty or obligation has been violated. Peake v. Buell (Wis.), 63 N. W. Rep., 1053; Brehmer v. Lyman (Vt.), 42 Atl. Rep., 613; Nicholson v. Railway, 41 N. Y., 525; Iron Works v. Larger (Ind. App.), 39 N. E. Rep., 209; Railroad v. Maus (Ind. App.), 51 N. E. Rep., 736. The relation of master and servant did not exist between plaintiff in error and defendant in error, and the reciprocal duties which are imposed by such relation did not rest upon either. So the former did not owe the latter the duty of exercising ordinary care in furnishing him a reasonably safe place to work. Plaintiff in error was only responsible to its em-

ployer, Peter T. Shields, for any want of care or skill in the execution of the work, and it was not liable to third persons for injuries which might occur after its completion. Mayor, etc., v. Cunliff, 2 N. Y., 175; Curtin v. Somerset, 140 Pa. St., 70; Congregation v. Smith, 163 Pa. St., 561, 26 Law. Rep. Ann., 504; Daugherty v. Herzog (Ind. Sup.), 32 Law Rep. Ann., 837. All the panel, which broke through under the weight of defendant in error and his fellow servant, lacked of being completed was time to undergo the natural process of hardening. Nothing more to complete it had to be done by the plaintiff in error, and it was entitled to have the panel left alone and left unmolested by Shields and his servants until sufficient time had elapsed for it to undergo this process. Until then the plaintiff in error must be regarded to have and exercise the same right and control over it as if it were the owner, and, not having authorized the defendant in error to go upon it, he took all the risks upon himself for the use he was making of it, and he has no right to complain of the defect which caused his injury; it being shown by the evidence that plaintiff in error could not have reasonably anticipated that the panel would be used by defendant in error or some other of Shields' servants at the time and manner it was before it had become sufficiently hardened to sustain their weight. Shearm. & Redf. on Neg., sec. 705; Dobbins v. Railway, 91 Texas, 60, 41 S. W. Rep., 62, 38 Law. Rep. Ann., 573; Railway v. Bigham, 90 Texas, 225. Therefore we conclude that the evidence in this case is not sufficient to show negligence on the part of plaintiff in error, and for that reason the judgment against plaintiff in error company should be reversed and the cause remanded as between it and defendant in error. The judgment in favor of Shields, not being complained of by either of the other parties, is affirmed."

ON MOTION FOR REHEARING.

Opinion Delivered December 12, 1900.

"It is objected in this motion that our finding as a fact that on 'Thursday before the accident hereinafter related occurred Shields ordered the representative of plaintiff in error company to take out the panel, and immediately construct a new one instead,' is not sustained by the record. This objection, we think, is tenable. Shields testified he did not instruct plaintiff in error to replace said panel, but that he pointed out the defect therein to Jester, a representative of plaintiff in error, 'and told him that he had best fix it right away, before the architect came, because he would compel him to take it out, as he had done on the lower floor.' This evidence shows that Shields objected to the panel on account of the defect, and instructed Jester to repair it, and indicated to him that the superintending architect would, in order for it to be properly repaired, compel the panel to be taken out. This objection and statement of Shields to Jester was made on Thursday be-

fore the occurrence of the accident, and caused, as stated in our opinion, Jester to have the defective panel taken out, and replaced by a new one. The error here corrected in our findings of fact, in our opinion, is immaterial, and does not affect the correctness of the action of this court in reversing the judgment of the court below, and remanding the cause for another trial. The motion is overruled."

GAINES, Chief Justice.—In disposing of this case, we are confronted at the threshold with a question of some difficulty. It is, however, a technical question,—that is to say one involving the construction of the laws which fix the jurisdiction of this court rather than one of practical importance to the parties to the suit. If we have not jurisdiction of the case, then it must be dismissed and the cause will go back for a new trial under the remand of the Court of Civil Appeals. If we have jurisdiction, then the evidence, as we think, being conflicting upon the issue upon which the case was made to turn and the Court of Civil Appeals having practically set aside the finding of the jury upon that issue, we can neither affirm the judgment of the trial court nor reverse that judgment and render judgment here in favor of the defendant in error.

The Court of Civil Appeals having reversed the judgment of the trial court and remanded the cause, the plaintiff in error, in order to give us jurisdiction, averred in his petition for the writ of error that the decision of the Court of Civil Appeals practically settled the case; and when we granted the writ, we were of opinion that if the plaintiff below was unable to adduce any additional evidence upon the main point at issue, this averment was true. But an examination of the testimony adduced upon the trial, in connection with the opinion of the Court of Civil Appeals, has now led us to a contrary conclusion.

Upon the trial of the case, the question of negligence on the part of the defendant in error depended upon the further question, whether Jester, its superintendent, had any reasonable grounds to anticipate that the carpenters of the original contractor would go upon the floor to work before the panel, the falling of which caused the injury, had time to harden. There was no evidence that the floor had been formally turned over to the main contractor as finished by the defendant in error; and there was direct evidence to the effect that the carpenters were on the day of the accident and had been for several days before, on another wing of the building. On the other hand, the plaintiff testified: "I don't know how long that piece that I fell through had been there; but we had been at work on it several days—a week or two. * * * I was employed by Mr. P. T. Shields as a carpenter. He had a good many other employes." Also, in reply to the question, "That flooring had been there several weeks and you had been working on it several days?" he answered "Yes." Again he answered the following question in the affirmative: "State whether or not any of the other

employes of defendant Shields had been working on that building a few days prior to the accident."

In reference to this matter, the Court of Civil Appeals found the following facts: "From the time that the scaffolding was removed from underneath until about the time the order to repair the panel was given, the floor may have been used by Shields' employes in performing their work upon the building. But at the time Shields ordered the panel repaired his hands had no work to do in that part of the building, but were working in the south wing and hospital of the asylum." In their conclusions of law they say: "All the panel, which broke through under the weight of defendant in error and his fellow servant, lacked of being completed was time to undergo the natural process of hardening. Nothing more to complete it had to be done by the plaintiff in error, and it was entitled to have the panel let alone and left unmolested by Shields and his servants until sufficient time had elapsed for it to undergo this process. Until then the plaintiff in error must be regarded to have and exercise the same right and control over it as if it were the owner, and not having authorized the defendant in error to go upon it, he took all the risks upon himself for the use he was making of it, and he has no right to complain of the defect which caused his injury,—it being shown by the evidence that plaintiff in error could not have reasonably anticipated that the panel would be used by defendant in error or some other of Shields' servants, at the time and manner it was, before it had become sufficiently hardened to sustain their weight. Shearm. & Redf. on Neg., sec. 705; Dobbins v. Railway, 91 Texas, 60; Railway v. Bigham, 90 Texas, 225. Therefore we conclude that the evidence in this case is not sufficient to show negligence on the part of the plaintiff in error, and for that reason the judgment against plaintiff in error company should be reversed and the cause remanded as between it and defendant in error."

If the Court of Civil Appeals had remanded the cause with an instruction to the trial judge, in case the evidence should be substantially the same upon another trial, to direct a verdict for the defendant, then clearly their decision would have practically settled the case,—provided the plaintiff in error, as alleged in his petition for the writ of error, is unable to adduce any additional evidence in support of his cause of action. So, also, if the opinion, without expressly instructing a verdict, had been such as to make it the duty of the trial court to give such instruction—for example, if the Court of Civil Appeals had announced that there was no evidence of negligence—we would have been bound, under the allegations in the petition for the writ, to have taken jurisdiction of the case. But we do not so construe the opinion. It was within the power of that court to disregard a finding of fact by the jury if contrary to the great weight of the credible testimony, and in effect to set aside the finding and to remand the cause, and we understand them to mean that under the facts found by them under the evidence, there was no negligence. They reversed the judgment be-

cause the evidence of negligence was not sufficient, not because there was in their opinion no evidence of negligence. Under this ruling, the trial judge, in the event the testimony should be the same on another trial, might feel it his duty to grant a new trial, but he would not be constrained to instruct a verdict.

Such being our construction of the opinion of the Court of Civil Appeals, the case falls within the rule laid down in Choate v. Railway, 91 Texas, 406, and not within that of Lee against the same company, 89 Texas, 583.

We conclude that the decision of the Court of Civil Appeals does not practically settle the case and that we therefore erred in granting the writ of error.

The cause is accordingly dismissed.

*Dismissed.*