## Bentley & Gerwig v. William Loverock.

1. LICENSEES—*Rights of, When Entering upon Premises by Permission of the Owner.*—A mere naked license or permission to enter premises of another will not create, in favor of the licensee, or impose upon the person who grants the permission, any obligation to provide against dangers or accidents which may arise out of the existing condition of the premises.

2. SAME—*Enter upon Premises Subject to All the Danger Attending the Act.*—A person who enters upon premises of another as a mere licensee by permission of the owner does so subject to all the dangers attending his going and enjoys the license subject to its attending perils.

3. NEGLIGENCE—*What is Contributory Negligence in a Licensee.*—Where a person, who enters upon the premises of another with which he is not familiar and which are poorly lighted, as a mere licensee, falls down an elevator shaft, he is guilty of such contributory negligence as will preclude a recovery for injuries sustained by him.

Trespass on the Case, for personal injuries.   Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge

Bentley & Gerwig v. Loverock.

presiding.  Heard in this court at the October term, 1901.  Reversed. Opinion filed May 22, 1902.

**Statement.**—Appellee, plaintiff below, recovered judgment against appellant, defendant below, for the sum of $500, from which this appeal is.  The defendant occupied a building in the city of Chicago, known as 69 West Washington street.  The building fronts south, is twenty-five feet wide between walls and about ninety-five feet in depth. The first floor is twenty-one feet in width and about ninety-five feet from south to north, and is divided by partitions into three rooms.  The front or office room is twenty-one feet in width by thirty-five feet in depth.  In the rear of that, and separated from it by a partition, is a store room of the same width and forty feet in depth.  In the rear of the store room is a shipping room, of the same width and twenty feet in depth.  In the partition between the office and the store room there are two doors; one about five feet west of the east wall of the building, and the other about the centre of the partition.  There is also a door in the partition between the store room and the shipping room north of it, which is situated northeast of the door between the office and the store room.  In the rear of the building, and about the center of the north wall of the shipping room, is a double door, which opens into the same from an alley in the rear of the building.  Just south of the double door, and about three feet distant from it, is a freight elevator opening in the floor of the shipping room, which is about five feet square, or five feet by six feet, and about twelve feet in depth.  At each corner of the opening are posts two by four inches in size, which extend up to the ceiling, inside which posts the elevator ran.  There is evidence tending to show that there were railings on the east and west sides of the opening and a sliding bar on the north side, which was up about five feet from the floor at the time of the accident hereinafter mentioned.  The plaintiff, Loverock, testified that July 13, 1897, he was an inspector for the Fidelity and Casualty Company; that his duty was to inspect stores where burglary insurance was taken, and, by the request

of the Fidelity and Casualty Company, he went to inspect the defendant's store; that he inquired for Mr. Bentley or Mr. Gerwig, saw the latter, introduced himself to him, and told him that he had been sent to inspect the store for the Fidelity and Casualty Company, and that Mr. Gerwig said, "All right, Mr. Loverock, go ahead"; that then, in Gerwig's presence, he inspected the door, transoms and windows, and went with Gerwig to examine the safes, which were in the middle room, above referred to as the store room. Witness testified:

"We could not see the safes, because it was dark. I had to take the names of the safes and also the numbers of the locks, and it was so dark that we could not see them, and Mr. Gerwig and I both struck matches and looked for the number and name of the safe."

He further testified that, after examining the safes, he and Gerwig went back into the office, and after some conversation there about the defendant's stock, etc., he told Gerwig that he was going to inspect the balance of the building, and Gerwig said, "All right, Mr. Loverock." Gerwig testified that after the examination of the safes in the store room, he and Loverock returned to his desk in the office, and that after some conversation between them as to the amount of cash defendant carried and the amount of goods it had on hand, he, Gerwig, was called to the telephone and left Loverock at the desk, and that when he returned to his desk Loverock was gone, and he did not see him again until after the accident; that when he left his desk he did not know where Loverock was going and when he returned did not know where he had gone. Loverock, after testifying that on the return of Gerwig and himself to Gerwig's desk in the office, Gerwig gave him certain data in regard to the stock, which he jotted down in his memorandum book, was questioned and answered as follows:

Q. "Then he was called to the telephone?" A. "I did not see him called to the telephone."

Q. "Well, he left you standing at the desk?" A. "I don't know. Well, he might have done so."

Loverock testified that, after the last conversation be-

tween him and Gerwig, he went to inspect the balance of the building; that he saw a ray of light coming from the rear door, probably one-fourth of an inch, just sufficient to make a ray of light, and walked to see what he supposed to be the door, and, in walking there, walked into the elevator shaft; that there was no rail or other protection, and he fell about twelve feet into the basement.

Q. "Describe to the jury the condition of this store in the rear of the office?" A. "It was a large room in the rear of the office, and in total darkness, you might say. You could not hardly see anything in it. The opening in the floor was not visible."

The foregoing was in plaintiff's examination in chief. On cross-examination he testified:

"One large room in the rear of the office that I walked through, and it was in darkness at that." Again: "Walked right straight from the door leading out of the office into the elevator shaft, a distance of about fifty feet. The room was very dark." Again: Q. "What was the size of that window to the right of the double doors?" A. "Why, I should judge they would be two and a half feet square, and there were iron bars over them, and so dirty that it was impossible for you to see, or see the light through them."

Appellee testified positively that there was only one room in the rear of the office, but the manifest weight of the evidence is that, as heretofore stated, there were two.

Defendant's attorney, for some reason incomprehensible to us, introduced evidence tending to prove that the shipping room, where the elevator shaft is, was fairly lighted. Plaintiff, referring to Gerwig, testified: "He gave me permission to go on and make the inspection." Gerwig testified that he did not know that plaintiff was to come to the store at all; that he had no notice of his coming. There is evidence tending to prove that, at some time, the defendant had a burglary policy issued by the Fidelity and Casualty Company, but, as admitted in appellee's argument, "the evidence does not show whether the policy was issued before or after the accident." There is no evidence that prior to the accident the plaintiff had made any application

for such a policy. Plaintiff and defendant both testified that plaintiff did not ask for a light.

O. W. DYNES, attorney for appellant.

HOYNE, O'CONNOR & HOYNE, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The evidence is that appellee went to appellant's store solely by the request of his employer, the Fidelity and Casualty Co., and that appellant did not know him, or that he was coming, and fails to show that appellant had any interest in his being there, and that, on appellee introducing himself and stating his business, appellant merely gave him, as appellee testified, permission to inspect the building. Under these circumstances, appellee was a mere licensee and appellee owed him no duty and was under no obligation to change the condition of its premises for his protection. The general doctrine in such case is thus stated in Buswell on Personal Injuries, 2d Ed., Sec. 77:

" A mere naked license or permission to enter upon the premises will not create, in favor of the person entering, or impose upon the owner or tenant who grants the license, an obligation to provide against dangers or accidents which may arise out of the existing condition of the premises; for the licensee goes upon the premises subject to all the dangers attending his going and so enjoys the license subject to its concomitant perils. (Sweeney v. O. C. & N. R. R. Co., 10 Allen, 368; Zoebisch v. Tarbell, 10 Allen, 385.) Thus, the owner is not liable for injuries received by a license for falling into an excavation left unfenced upon the land (Reardon v. Thompson, 149 Mass. 267), or by the existence of obstructions such as logs lying in the path. Nor is the owner of a building bound to fence or enclose dangerous machinery contained in it for the protection of a mere licensee. (Matthews v. Bensel, 51 N. J. L. 30; Larmore v. Crown Point Iron Co., 101 N. Y. 391; Galveston Oil Co. v. Morton, 70 Texas, 400.) "

The authorities in the notes are inserted in parentheses in the text for convenience. Gibson v. Leonard, 143 Ill. 182; Fitzpatrick v. Cumberland Glass Mfg. Co., 61 N. J. L. 378; Hamilton v. Minneapolis Desk Mfg. Co., 78 Minn. 3.

Bentley & Gerwig v. Loverock.

In Gibson v. Leonard, *supra*, the fire insurance patrol responded to an alarm of fire on the defendant's premises, and finding the door locked, forced it open. A member of the patrol was injured by the falling of the counter weight of an elevator in the building.

In Hamilton v. Minneapolis Desk Mfg. Co., *supra*, a member of the fire department of the city of Minneapolis entered the defendant's premises, in the discharge of his duty, to extinguish a fire, and was injured by falling into an unguarded elevator shaft.    Held, in each case, that there could be no recovery.

But even though it were conceded that appellant owed some duty to appellee, we are of opinion that appellee's conduct, as testified to by himself, was such as to preclude a recovery.    He had been in the middle or store room, and had found that room so dark that he could not see the safes, and in order to see their names and numbers he and Gerwig had to light matches.    After returning to the office, and while Gerwig was attending to a call at the telephone, appellee, without notice to Gerwig or any one, and without asking for guide or light, deliberately entered the middle room and passed thence into the shipping room, the whole floor north of the office partition being, as he testified, in total darkness.    That such conduct, under the circumstances known to appellee, was negligence which materially and proximately contributed to his fall into the elevator shaft, no reasonable mind can doubt, and we hold, as matter of law, that it was negligence which precludes a recovery.

In Brugher v. Buchtenkirch, 167 N. Y. 153, the court say:

"One is not justified, unless under some special stress of circumstances, in going on a tour of discovery in a strange building, when it is so dark that he is unable to see where he is going, or with what obstructions he may meet.    The case, Piper v. N. Y. C. & H. R. R. R. Co., 156 N. Y. 224, is exactly in point.    It was there said: ' The plaintiff was guilty of contributory negligence in utterly failing to use that prudence which was especially incumbent upon him under the circumstances of the situation.    The darkness

called upon him to use it, and had he done so, the accident could not, within any reasonable probability, have happened. A person whose power of vision is temporarily obstructed by some intervening condition, should take the greater care, and should, if it be possible, await its passing away. If he neglects to proceed cautiously, he must accept the consequences of his undue precipitation."

Appellee was the only one in the shipping room when the accident occurred, and while the defense attempted to prove that the light in the room was fairly good, appellee testified that he could not see, and if, for any cause, he could not see, his conduct in the premises was negligent. He also testified that it was very dark, and he can not now be heard to say that it was not.

Appellee has assigned cross-errors, and his counsel, in argument, complained of certain instructions; but, in view of the conclusions above stated, we deem it unnecessary to consider the instructions.

The judgment will be reversed.