[No. 13400. Department One. November 13, 1916.]

RUDOLPH GASCH *et al.*, *Respondents*, v. E. J. ROUNDS *et al.*, *Appellants.*[1]

APPEAL—REVIEW—PLEADINGS—AMENDMENTS. Where a defective answer was treated as raising an issue which was fully tried out on appeal the pleadings will be considered as sufficient to present the issue.

NEGLIGENCE—DANGEROUS PREMISES—LICENSEES OR INVITEES— EVIDENCE. Under the rule that an implied invitation to visit premises, as distinguished from mere license, requires mutuality of interest on the subject to which the visitor's business relates, plaintiff, injured by falling into an unguarded pit at night, is a mere licensee and not an invitee, where it appears that on request he was accompanying another to make a purchase, who, on entering the building, suggested that plaintiff wait outside because of the darkness, thereby removing the status of invitee on the part of the plaintiff, who had no business of his own on the premises.

SAME—CONTRIBUTORY NEGLIGENCE OF TRESPASSERS. In such a case, the plaintiff, in disregarding the suggestion and advancing in the darkness without a light or any caution, and plunging at right angles from a straight passage, is guilty of contributory negligence as a matter of law.

SAME—CARE REQUIRED AS TO TRESPASSERS. The owner of premises owes no duty to a mere licensee who fell into an unguarded pit at night, except not to wantonly or willfully injure him.

'Reported in 160 Pac. 962.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 14, 1915, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Reversed.

*Preston & Thorgrimson* and *Peters & Powell,* for appellants.

*Wm. Brueggerhoff* and *Peterson & Macbride,* for respondents.

ELLIS, J. — Action for personal injuries. Defendants Osgood and wife owned two lots abutting upon the north side of Third avenue in the town of Renton, with a frontage of sixty-five feet and running back to a depth of one hundred feet. Prior to the time here in question, there had stood on the front of these lots a frame building occupied by tenants of the Osgoods, among them one Hardy, a plumber, and one Kane, a dealer in electrical fixtures. At the time here in question, this building had been moved to the rear of the lots, Kane vacating and moving across the street, but Hardy still remaining as a tenant of the Osgoods and conducting his business therein. The Osgoods, through Rounds and wife, doing business as Rounds Construction Company, were erecting a two-story brick building about sixty-five feet square on the front of the lots. This building was divided into four storerooms of equal width, save the westerly one which had five feet cut off for a hallway running back to the rear of the building. The walls were up, the roof was on, the studding for the partitions was set, some of the partitions were lathed, and the floors were roughed in. No doors nor windows were hung and the fronts of the storerooms were not in. Some fifty feet back from the front was a wall running east and west, cutting off the rear of the storerooms and extending about eight inches into, but not crossing, the passageway along the westerly wall. Immediately off of this passage and immediately back of this rear wall of the westerly storeroom was a cement-lined furnace pit, ten feet square

and eight feet deep. This pit was uncovered, unguarded and unlighted.

About eight o'clock on the evening of November 21, 1914, one McDonald, a man named Dorsey, and plaintiff, desiring to purchase certain electrical fixtures called "rosettes" for use in a house being built by McDonald, were directed to seek them from Kane at Hardy's plumbing shop at the rear of the new Osgood store building, where they supposed Kane still conducted his business. They first went north along Wells street, a cross-street about one-third of a block west of the new building, to an unenclosed private space leading back toward the frame building occupied by Hardy. They found this space partially blocked with lumber and piles of wood. In the darkness they despaired of finding the way through in safety and returned to the front of the new store building on Third avenue. They entered, plaintiff leading, went back through the westerly storeroom to its rear wall, and plaintiff passed round the end of this wall into the passageway. Seeing a light shining through the back of the building, he started toward it and fell into the pit. His companions coming up struck matches and, by their light, found him unconscious at the bottom of the pit. He sued to recover for his injuries, alleging Osgood's ownership of the premises, his contract with Rounds and wife, doing business as Rounds Construction Company, to erect the building, Hardy's occupancy of the old building in the rear as Osgood's tenant, Hardy's invitation to the public to pass through the new building to and trade at his store, with the knowledge and consent of the defendants, and negligence on the defendants' part in leaving the pit unlighted and unguarded. Defendants, by answer, admitted Hardy's occupancy of the building as Osgood's tenant, but denied the invitation to the public as follows:

"They deny that the said Frank H. Osgood, or Georgina Osgood, or Susie Rounds gave any consent to the use of the

building on the front part of the lot or its passageways, as access to the rear building."

They also set up contributory negligence as an affirmative defense, which was traversed by the reply.

The trial resulted in a verdict for $800 in favor of plaintiff and against all the defendants. At appropriate times, defendants moved for a nonsuit and for a directed verdict. Both motions were denied. From a judgment entered on the verdict, all of the defendants appeal.

Appellants contend that respondent was not an invitee but a trespasser, or at best a mere licensee, to whom appellants owed no duty except not wilfully or wantonly to injure him. Respondent retorts that this issue was not presented by the pleadings, because in their answer appellants merely denied that either Osgood or his wife or Mrs. Rounds gave any consent to the use of the new building, or its passageways, as access to the rear building. It is true that these denials are in form a negative pregnant and, technically construed, amount to an admission that Rounds gave consent and that Hardy, with the knowledge and consent of all the appellants, held out the invitation. But at the trial it seems to have been assumed by the court and all of the parties that the pleadings were sufficient to present the issue of invitee or licensee. That issue was fully tried, hence we must treat it as an issue here. *Gaskill v. Northern Assurance Co.*, 73 Wash. 668, 132 Pac. 643.

Though unsatisfactory and in the sharpest conflict, the evidence was sufficient to take to the jury the primary question of an implied invitation to pass through the new building to the old one, to such persons as might desire to visit it for any purpose connected with the business there conducted by the tenant Hardy. On that primary question, the verdict is conclusive upon us. But it does not follow that respondent was such a person. Aside from the invitation to the public generally, implied from long acquiescence by the owner of private premises in the general public use of a way across

his premises—a phase of the subject resting on an independent basis with which we are not here concerned—the rule of implied invitation may be stated as follows: Invitation as distinguished from mere license is implied by law only when the visitor comes for some purpose connected with the business in which the owner or occupant is there engaged or which he permits there to be carried on, and there must be some real or supposed mutuality of interest in the subject to which the visitor's business relates. This rule, which is sustained by almost universal authority, is thus stated in 3 Shearman & Redfield, Law of Negligence (6th ed.), § 706:

"Invitation by the owner or occupant is implied by law where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise."

In an opinion reviewing many authorities, the supreme judicial court of Massachusetts states the rule as follows:

"It is well settled there that to come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be at least some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the object of the visit may not be for the benefit of the occupant." *Plummer v. Dill*, 156 Mass. 426, 31 N. E. 128, 32 Am. St. 463.

See, also, *Severy v. Nickerson*, 120 Mass. 306, 21 Am. Rep. 514; *Hart v. Cole*, 156 Mass. 475, 31 N. E. 644, 16 L. R. A. 557; *McCarvell v. Sawyer*, 173 Mass. 540, 54 N. E. 259, 73 Am. St. 318; *Dixon v. Swift*, 98 Me. 207, 56 Atl. 761; *Larmore v. Crown Point Iron Co.*, 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718; *Brehmer v. Lyman*, 71 Vt. 98, 42 Atl. 613; *Pauckner v. Wakem*, 231 Ill. 276, 83 N. E. 202, 14 L. R. A. (N. S.) 1118.

The test "of mutuality announced by the supreme court of Massachusetts seems to be the best that has been suggested." 3 Elliott, Railroads (2d ed.), § 1249. The rule, of course, does not apply to children of tender years. *Northwestern El. R. Co. v. O'Malley*, 107 Ill. App. 599. This court in a recent case has, in effect, sanctioned the rule as we have stated it, and has impliedly recognized mutuality of interest as its basis. *Kroeger v. Grays Harbor Construction Co.*, 83 Wash. 68, 145 Pac. 63.

Under this rule, was respondent here an invitee? We think not. True, he testified that McDonald had hired him to help wire McDonald's house and had asked him to help select the rosettes, that they first went to the Renton Hardware store and were there told "to go to Hardy who had them," and that he was not looking for Kane. But in every one of these particulars he was flatly contradicted by his own chief witness, McDonald. McDonald, though repeatedly pressed upon the subject, refused to testify that he had hired respondent for any purpose. He testified that he and his wife were paying a neighborly visit to respondent and his wife that evening; that he mentioned the fact that he was wiring his house and asked respondent to go with him to get the rosettes merely for company, and that Dorsey, who was there at the time, went for the same reason; that the clerk at the hardware store told him he could get the rosettes from Kane, who was "in with Hardy in the plumbing shop in the rear of the new building;" that he knew he was not going to get the materials from Hardy, but from Kane, and was looking for Kane at the time, and that he, McDonald, was going to select the rosettes. True, here is a conflict of evidence and, since no authority is cited to the contrary, we shall assume that a vital and positive contradiction by a party of a witness whom he introduces as worthy of belief raises such a conflict as to take the question to the jury; but there still remains the uncontroverted fact that respondent, before he entered the new building, was absolved from any duty to

McDonald to enter it. McDonald testified that, when he found that they could not reach Hardy's store from the rear and had returned to the front of the new building, he suggested, because it was so dark, that respondent and Dorsey remain outside while he went through to the store; that, as the place was so dark, he thought it would be just as well if they would wait for him. This was not denied by respondent or any one else. Even assuming that McDonald actually had hired respondent and had been expecting to make his purchase from Hardy, and that he was actually looking for Hardy, not for Kane, still, when he told respondent to wait outside because of the darkness, he removed the only possible ground for a pretense on respondent's part to the status of an invitee. Respondent had no business of his own to transact at Hardy's store and, whatever his relation to McDonald, he no longer had any business of McDonald's at the store. Certain it is, from that time on, he merely went as company, just as McDonald testified he had done from the start. From the time he entered the building in disregard of McDonald's direction that he stay outside, he was technically a trespasser, or at best a mere licensee with no business there, either of his own or of another. He had no invitation. Even that of his alleged employer had been withdrawn.

It follows that the appellants owed him no duty except not wantonly or wilfully to injure him. He took the way as he found it, subject to its attending perils. When he advanced in the darkness, without a light and without any caution, as his own testimony shows he did, and blindly plunged at right angles from the straight passage, he was guilty of negligence which on all authority must be held, as a matter of law, the proximate cause of the injury. *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526; *De Graffenried v. Wallace*, 2 Ind. Terr. 657, 53 S. W. 452; *Brugher v. Buchtenkirch*, 167 N. Y. 153, 60 N. E. 420; *Bentley & Gerwig v. Loverock*, 102 Ill. App. 166; *Bridger v. Gresham*, 111 Ga. 814, 35 S. E. 677; *Massey v. Seller*, 45 Ore. 267, 77 Pac.

397; *Blackstone v. Chelmsford Foundry Co.*, 170 Mass. 321, 49 N. E. 635; *Piper v. New York Cent. & H. R. R. Co.*, 156 N. Y. 224, 50 N. E. 851, 66 Am. St. 560, 41 L. R. A. 724.

The judgment is reversed, and the cause is remanded for dismissal.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.