[No. 26690. Department Two. March 16, 1938.]

WILBUR M. SMITH *et al., Respondents,* v. EMIL MOTTMAN *et al., Appellants.*[1]

[1]Reported in 77 P. (2d) 376.

*Whittemore & Truscott* and *Charles McCarthy,* for appellants.

*Edgar P. Reid* and *John F. McCarthy,* for respondents.

ROBINSON, J.—In this action, the plaintiffs, Wilbur M. Smith and Mary E. Smith, sued the defendants, Emil Mottman and Oral Mottman, to recover for injuries suffered by Mrs. Smith in a fall down a stairway of a building owned and operated by the defendant community in Kelso, Washington. The jury returned a verdict for the defendants. Thereafter, a new trial was ordered, upon the sole ground of errors in the instructions, and the defendants have appealed from the order.

The defendants owned the two-story Mottman build-

ing situated at the corner of Allen and Pacific streets, in Kelso. The lower story was occupied by their department store. The upper story was divided into apartments rented to various tenants. The building had a fifty-foot frontage on Allen street, one of the principal streets of Kelso, and one hundred feet on Pacific street. There were three entrances to the store, one on Allen, another one at the corner, and a third about the middle of the Pacific street side. The entrance to the second-floor apartments was at the rear of the Pacific street side of the building, which consisted of double and rather wide glass doors, recessed about two feet, with a semi-circular glass fan above them. One of the doors bore the legend "APARTMENTS" in large letters. Through these large doors, even in a photograph taken from across the street, one may see the broad ascending stairway. Between the Pacific street store entrance and the apartment entrance, there is a single door, but slightly recessed, if at all. The upper half of this door consists of six opaque glass panes, the lower three of which are covered with a wire screen or grating. The door opens inward upon a basement stairway which has no formal landing at the top just within the door, but only an unusually wide step, a step, perhaps, a foot in width.

For a period of more than six years prior to the accident, one of the upstairs apartments had been occupied by Mrs. Miller, a seamstress who made repairs and alterations for the Mottmans' store and for the public generally. On January 23, 1935, Mrs. Smith purchased a dress at defendants' store which needed slight alterations, and the clerk who waited upon her suggested that she might have them made by Mrs. Miller, who could be found in the apartments upstairs. On the following day, Mrs. Smith returned to the store, and, not seeing the clerk who had served her the pre-

vious day, asked another saleswoman where to find Mrs. Miller. According to Mrs. Smith's testimony, the clerk said: "You go outside . . . and go on up the street until you come to the first door and go upstairs and turn." The clerk, however, testified that she did not tell Mrs. Smith to take the first door, but told her to take the apartment door, go upstairs and down the hall to apartment No. 3. Whatever the fact may be about this, Mrs. Smith went out and up the street, entered the first door she came to, and fell down the stairs into the basement.

Instruction No. 9 was given as follows:

"An invitee is one who is either expressly or impliedly invited onto the premises of another in connection with the business carried on by that other. Mere permission to use the premises, or a portion thereof, is not sufficient to make one an invitee. He must come on and must use the premises for a purpose connected with the business in which the occupant is engaged.

"To such an invitee, the owner or occupant of premises owes the duty of exercising ordinary care. To retain his status as an invitee, one must remain within the limits of his invitation. He is not permitted to explore the premises at will, or to go into places not intended for his use, but must use the place within the manner contemplated by, and within the limits of, his invitation.

"A licensee is one who occupies a position somewhere between that of an invitee and a trespasser. He is a licensee, because he has not been either expressly or impliedly invited on the premises in connection with the business therein carried on; but he is not a trespasser because he has the permission of the person carrying on the business to enter. An invitee who exceeds the limits of his invitation may become either a licensee or a trespasser. To a licensee or trespasser the owner or occupant of premises owes only the duty not to wilfully or wantonly injure him."

Instruction No. 10 was given as follows:

"You are instructed that where a person essays to enter on the premises of another under invitation, she is bound by that invitation. If the limits of the invitation are exceeded, then one loses her status as invitee, and becomes a bare licensee.

"To a licensee, one owes only the duty not to wantonly or wilfully injure her.

· "*If you find that the door through which Mrs. Smith attempted to enter the apartments was designed and intended only for the use of employees and tradesmen, and that plaintiff's invitation did not extend to the use of the door, then plaintiff at the time of her injury was a bare licensee, and cannot recover unless defendants wilfully or wantonly injured her.*"

█ It is our opinion that the new trial was properly granted. That portion of instruction No. 10 which we have italicized amounted to a direction to the jury to bring in a verdict for the defendants, for it was not disputed that the door was designed for the use of employees and tradesmen only; and there was no doubt, technically speaking, that the invitation did not extend to that door, and there was no contention that the plaintiff was wilfully or wantonly injured.

█ We agree also with the respondents that there was much in these instructions which was unnecessary and confusing. The question as to whether or not Mrs. Smith was technically a licensee or invitee as to the door she attempted to enter was a false issue. There was no dispute concerning the fact that Mrs. Smith was invited to the apartments. Mr. Mottman himself testified that he had rented an apartment to Mrs. Miller for a number of years, and that he knew she carried on a business there which the general public was invited to patronize. This is proof of invitation. *Gasch v. Rounds*, 93 Wash. 317, 160 Pac. 962. Neither is it disputed that Mrs. Smith was on her way to Mrs. Miller's to have a dress altered; that is, that she was

acting in acceptance of the invitation. She so testified, and her evidence is fully confirmed by the two saleswomen employed by the defendants and who were called to testify on their behalf.

Since Mrs. Smith was an invitee as to one of the apartments, if the location and appearance of the basement door, considered with other facts in the case, was such as to mislead her into a reasonable belief that it was the entrance to the apartments, she was entitled to the same protection in using that door as an invitee would be entitled to, even though it was, in fact, intended for the use of employees and tradesmen only. American Law Institute Restatement of the Law of Torts, 942; *Knapp v. Connecticut Theatrical Corp.*, 122 Conn. 413, 190 Atl. 291; and see note in 20 A. L. R. 1147, entitled "Liability for Injury to Persons on Business Premises in Consequence of Passing Through Wrong Doorway."

The trial judge correctly analyzed the matter in his memorandum on the motion for a new trial, saying:

"In instruction No. 10 the jury was told that 'If you find that the door through which Mrs. Smith attempted to enter the apartments was designated and intended only for use of employees and tradesmen' etc., they should find for defendants unless they wilfully injured her.

"Instruction No. 10 is based solely upon the intended use of the door. The use of the door was not the issue involved. The question before the jury was whether the appearance and location of the door deceived Mrs. Smith. Everybody conceded that it was intended and used as an entrance to the basement and not to the apartments; but Mrs. Smith says she was deceived by the location and appearance of that entrance and thereby was injured; and she was entitled to have that question submitted to the jury. To say that the 'intended use' of the door governs is to deny her right to be heard upon the question of its 'location and appearance.'"

The appellants very earnestly contend that (1) there was not sufficient evidence to take the question of negligence to the jury; and (2) that Mrs. Smith's negligence was shown as a matter of law, and that, therefore, a new trial should not be granted.

As to the first matter, we think that the question of negligence was for the jury, especially in view of the fact that Mr. Mottman himself testified that at least one other person, about three years before, "mistook that door for the apartment house door," even though that mistake happened at night and during a storm, while Mrs. Smith's mistake occurred in daylight.

As to the second ground, the appellants contend, with much reason, that Mrs. Smith should have been warned by the very appearance of the door that it was not the apartment entrance; and that, in any event, having opened the door, she stepped right in without looking.

We shall not detail the evidence, but we have carefully examined it and a great number of decisions of our own and from other jurisdictions, and we think, by the decided weight of authority, the question of contributory negligence was for the jury. *Hayden v. Colville Valley Nat. Bank,* 180 Wash. 220, 39 P. (2d) 376; *McRickard v. Flint,* 114 N. Y. 222, 21 N. E. 153; *Clopp v. Mear,* 134 Pa. 203, 19 Atl. 504; *Rhodius v. Johnson,* 24 Ind. App. 401, 56 N. E. 942; *Foren v. Rodick,* 90 Me. 276, 38 Atl. 175; *Downing v. Merchants Nat. Bank,* 192 Iowa 1250, 184 N. W. 722, 20 A. L. R. 1138.

The respondents, as they have the right to do, *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 135 Pac. 209, claim that they were also entitled to a new trial by virtue of errors alleged to have been made in instructions 13, 16, 17, 18, and 21.

To enter into a discussion of all of these instructions would unwarrantedly extend this opinion to a monograph on this branch of the law of negligence. We think, however, that we should notice instruction No. 21, as it seems very likely that that matter will recur on a new trial. This instruction was given as follows:

"You are instructed to disregard all alleged instructions given to plaintiff Mrs. Smith by the clerk in the store regarding the way to reach the seamstress's room upstairs."

This instruction was given upon the theory that there was no showing that the clerk had any authority to give directions. As showing negligence on the part of the defendants, that evidence, it is true, could not be considered. But the appellants say in their brief, and at the trial they no doubt supported the contention before the jury by appropriate argument, that:

"No one in the exercise of ordinary care would mistake the basement door for the apartment door."

It seems to us that this evidence should not have been entirely excluded from the jury's consideration. The jury may have denied the appellant a recovery upon the very ground that she was negligent in selecting the door. If Mrs. Smith was, in fact, told by one who, she had reason to believe, was familiar with the building, that the "first" door was the one to use to go to Mrs. Miller's apartment, it would seem that that fact would have some relevancy upon the question as to whether she was negligent in selecting the first door as the apartment entrance.

The order granting a new trial is affirmed.

STEINERT, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.