[No. 27760.   Department Two.   March 11, 1940.]

NOAH GARNER, *as Guardian ad Litem for Anita Huovar et al., Minors, Appellant,* v. PACIFIC COAST COAL COMPANY *et al., Respondents.*[1]

[1] Reported in 100 P. (2d) 32.

144

*Adams & Smith* and *George F. Hannan,* for appellant.

*Green & Burnett,* for respondent Pacific Coast Company.

STEINERT, J.—Plaintiff, as guardian *ad litem* for two minor girls, brought suit against two corporations, Pacific Coast Coal Company and The Pacific Coast Company, to recover damages for injuries sustained by the minors while walking across certain lands allegedly owned by defendants. At the conclusion of his case, plaintiff took a voluntary nonsuit as to Pacific Coast Coal Company, and the trial proceeded upon the defense of The Pacific Coast Company.

As against the latter defendant, the jury returned a verdict in favor of plaintiff on both of his causes of action. Defendant The Pacific Coast Company thereupon moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The motion for judgment notwithstanding the verdict was granted. The alternative motion for new trial also was granted, upon two specific grounds: (1) That the court erred in giving certain instructions, and (2) that the amounts of the verdict were excessive. The court, however, further ordered that, if plaintiff should consent to a reduction of the amounts stated in the verdict, the motion for new trial on the second ground would be denied. Plaintiff filed his written consent to such reduc-

tion, and the court, by its order, thereupon granted a new trial solely on the first ground of the motion. Judgment for defendant was entered accordingly, from which plaintiff has appealed.

For convenience, we shall refer to the two minor girls as appellants, and to The Pacific Coast Company as respondent.

This appeal presents two questions: (1) Whether the trial court erred in holding, as a matter of law, that the evidence was insufficient to support appellants' causes of action, and (2) if the court erred in that respect, whether there was error in the particular instructions given.

■ A determination of the first question necessitates an understanding of the facts, considered in the light most favorable to appellants. *Jordan v. Skinner,* 187 Wash. 617, 60 P. (2d) 697.

Respondent in 1918 or 1919 acquired, and is still the owner of, a large tract of land of several thousand acres about one-half mile south of the city of Issaquah, and lying between the present Hobart-Issaquah road and Issaquah creek. Respondent's predecessor in interest had used this land, in the vicinity with which we are here concerned, as a place for "dumping" or depositing debris and waste material resulting from its coal mining operations conducted on, or adjacent to, the premises. In the course of time, covering a period of thirty years or more, the cumulation of these deposits had formed an irregularly shaped mound or knoll about seven hundred feet in length and from about eighty to two hundred feet in width, extending across the land from what is now the improved Hobart-Issaquah road to Issaquah creek. Along its course, the mound, which is referred to as, and in fact was, a refuse dump, was broken by depressions and undulations; its highest point of elevation was about twenty feet.

Respondent ceased to work its mines in that area about the year 1923 or 1924, but there was some evidence in the case, though slight and of an uncertain and unsatisfactory nature, that, prior to that time, it had deposited on the refuse dump waste material hauled from its mine located approximately a thousand feet distant from the particular land, and on the opposite side of Issaquah creek. However, we shall consider that evidence as sufficient to make that phase of the case a question for the jury and as constituting a fact established by the verdict.

As a result of the disuse of the refuse dump and through a process of disintegration, a layer of soil had formed on the surface of the mound, over which had grown grass, vines, bushes, and even trees in certain places. To the casual observer the mound had the appearance of a natural hill or knoll, but to the experienced eye of a coal operator it would be apparent that it was an old refuse dump.

It is undisputed that refuse from coal mines, when dumped together in large quantities, is subject to spontaneous combustion, and that such combustion may take place at any time within fifty years, or more, after a dump has been abandoned. The greater the amount of impurities contained in the refuse deposits, the greater is its potentiality for spontaneous combustion. The waste material forming this particular dump consisted of coal-slack, pyrite, slate, and shale, which are found in low-grade sub-bituminous coal deposits, and among the ingredients of which are clay, lime and sulphur; these ingredients tend to produce slow oxidation. Such a dump may lie inactive or dormant for many years and then develop a condition that may be hazardous to anyone walking over it.

For at least thirty years, a path or trail ran along and over the refuse dump, between the present Hobart-

Issaquah road and Issaquah creek. The path was two or three feet in width, was well beaten and was easily discernible. In years gone by, residents of the surrounding area had been in the habit of using the path for purposes of ingress and egress over the land and, more recently, for the purpose of visiting the state fisheries dam and hatchery now located on Issaquah creek. Respondent neither prohibited nor warned persons against use of the path or crossing of the premises, which for years has been wild, unoccupied land.

On July 24, 1938, appellants, who were then sixteen years of age, were returning from a social call in the vicinity of Issaquah creek, and were walking along the path over the refuse dump, toward Issaquah. Suddenly the top of the path gave way, causing them to fall, or sink, to a depth of several feet into a bed of hot cinders, as a result of which they sustained serious injuries to their hands and feet. There was no smoke nor flames nor odor issuing from the refuse dump to indicate that there was fire underneath, nor was there any burned surface area in the vicinity.

So far as the record shows, that fortuity was, with one exception, the only instance wherein fire, resulting from spontaneous combustion or otherwise, had ever taken place within the dump. Two witnesses, however, testified that, in 1926, a horse belonging to one of them had broken through the crust of the path and had been severely burned. There is no contention, however, that respondent ever heard or knew anything about that occurrence.

Respondent introduced evidence tending to prove that it had no knowledge of either the character of the mound or of the trail leading over it. Its evidence was also to the effect that the refuse composing the dump, at the place where the accident occurred, consisted of pea coal, which is not readily subject to spontaneous

combustion, and which, when ignited, would be entirely consumed within a month or two. As stated, however, the evidence is to be considered in the light most favorable to appellants; and, upon that basis, we are of the opinion that it was sufficient to warrant the jury in finding that respondent had knowledge of the refuse dump and its composition and also of the existence of the path over it.

The basis of this action is the alleged negligence of respondent in failing to give warning of the dangerous condition of the premises. The duty which respondent owed to appellants is dependent upon the legal relations which existed between respondent and those using the path or trail over its property.

Appellants contend that they were invitees and that respondent owed them the duty of using reasonable care. Respondent, on the other hand, contends that they were trespassers or, at best, bare or mere licensees, to whom the only duty owed by respondent was that of refraining from wilfully or wantonly injuring them.

An invitee is one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged, or which he permits to be conducted thereon; there must be some real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates. *Gasch v. Rounds*, 93 Wash. 317, 160 Pac. 962; *Kinsman v. Barton & Co.*, 141 Wash. 311, 251 Pac. 563. 3 Shearman & Redfield, Law of Negligence (6th ed.), § 706.

The case of *Hanson v. Spokane Valley Land & Water Co.*, 58 Wash. 6, 107 Pac. 863, appears to be somewhat out of line with our later decisions announcing that rule. In that case, it was held that the maintenance of a well defined private road and way of necessity, con-

necting with a main traveled public highway, which private road was subjected to constant, daily use by the public, and which had for many years been kept open to such travel, constituted an implied invitation to the public to use it as a public way, and that a member of the public traveling over such road was an *invitee,* to whom the owner of the land was under the obligation to exercise reasonable care and diligence to keep it in a safe condition. Unknown to the plaintiff in that action, defendant had, on a certain occasion, extended across the road a ditch six or eight feet wide and approximately two feet deep. There were no barriers, lights, or warning signs placed about the excavation. Shortly thereafter, at night time, plaintiff was traveling over the road on horseback. The horse fell into the ditch, and plaintiff was severely injured. It was held that defendant was guilty of negligence in leaving the ditch unguarded at night and therefore liable to plaintiff, as an invitee, for the injuries sustained.

It is apparent from the opinion in that case that the court felt that, under the peculiar combination of circumstances, the plaintiff should be permitted to recover. It is also apparent that the court was of the view that, if the plaintiff was but a mere licensee, he could not recover, because to a licensee the owner of the land owed no duty as to the condition of the premises "except that the owner should not knowingly permit the licensee to run upon hidden dangers, or wilfully cause him harm." The facts there undoubtedly presented what is often termed "a hard case," and in order to sustain a cause of action, the court was seemingly driven to the extremity of holding, "under the facts alleged," that the plaintiff was an invitee. It appears to us now that, under the peculiar facts of that case, it logically might have been held that the plaintiff, even though a mere licensee, had knowingly been permitted

by the owner to run upon a concealed danger. However that may be, we do not believe that the decision is wholly consonant with our later decisions in discriminating between an invitee, on the one hand, and a licensee or a trespasser, on the other.

There is no contention in this case that appellants were express invitees, and, under the rule above stated, we conclude that they were not implied invitees, but, at best, were only bare or mere licensees.

A long line of decisions in this state has emphatically declared and definitely settled the rule that, as to a bare or mere licensee, the owner or occupant of land owes only the duty of not wilfully or wantonly injuring him. *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526; *Gasch v. Rounds*, 93 Wash. 317, 160 Pac. 962; *Inman v. Home Tel. & Tel. Co.*, 105 Wash. 234, 177 Pac. 670, 2 A. L. R. 1543; *Smith v. Seattle School Dist. No. 1*, 112 Wash. 64, 191 Pac. 858; *Waller v. Smith*, 116 Wash. 645, 200 Pac. 95; *Bolden v. Independent Order of O. F.*, 133 Wash. 293, 233 Pac. 273; *Hiatt v. Northern Pac. R. Co.*, 138 Wash. 558, 244 Pac. 994; *Kinsman v. Barton & Co.*, 141 Wash. 311, 251 Pac. 563; *Buttnick v. J. & M., Inc.*, 186 Wash. 658, 59 P. (2d) 750; *Holm v. Investment & Securities Co.*, 195 Wash. 52, 79 P. (2d) 708.

The case of *Hanson v. Spokane Valley Land & Water Co.*, 58 Wash. 6, 107 Pac. 863, which we have already discussed in connection with another principle, recognizes this last mentioned rule. The weight of authority likewise supports the rule adopted in this state. 45 C. J. 796, § 201; 20 R. C. L. 57, § 53.

We think that it must be held, as a matter of law, that, under this rule, respondent is not liable. There is no contention by appellants that respondent wilfully injured them, and we are convinced that it must likewise be held that it did not wantonly do so.

■ Knowledge on the part of respondent of the existence of the dangerous condition was an essential prerequisite to a finding of wanton negligence. *Price v. Gabel*, 162 Wash. 275, 298 Pac. 444.

■ There is no direct evidence that respondent knew that the interior of the refuse dump was burning; and, concededly, there were no exterior manifestations of such condition. In fact, there is no evidence at all, with the exception of one circumstance, that the dump had ever before been burning, either within or without; and as to the one exception, in 1926, there is no evidence that respondent ever knew of it.

While knowledge may be established by circumstantial evidence, we are clearly of the view that the total of appellants' evidence which might have any bearing on that issue, was insufficient to take the case to the jury on the question of respondent's knowledge of the existing conditions. Unless the dump was on fire, it would not constitute a danger, and the mere fact that at some time, or at some point within the dump, spontaneous combustion might occur, is not of itself sufficient to charge respondent with having wantonly injured a licensee upon its premises.

In the final analysis, respondent's liability, if any, in this case, would have to be predicated on the probability of the occurrence of spontaneous combustion and the consequent likelihood of death or serious bodily injuries. While, in a proper case, a finding of wanton negligence might justifiably be based on such supporting elements, we do not think that the evidence in this case was sufficient to warrant any such finding.

If, however, it could be said that the conditions, actual, probable, or possible, constituted a concealed or hidden danger, as illustrated or referred to in some of the preceding cases, there is yet lacking an element necessary to constitute wanton injury, namely, that of

*knowingly* permitting appellants to run upon such danger; for, aside from respondent's lack of knowledge that the refuse dump was afire, there is no evidence that it knew that appellants were upon its premises.

The motion for judgment notwithstanding the verdict was properly granted. It is, therefore, unnecessary to consider the question raised concerning the court's instructions.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.

